THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* HOOVER,

APPELLEE AND CROSS-APPELLANT.

[Cite as *State v. Hoover,* **123 Ohio St.3d 418, 2009-Ohio-4993.**]

*R.C. 4511.19(A)(2) does not violate the Fourth Amendment to the United States*

*Constitution or Section 14, Article I of the Ohio Constitution.*

(No. 2007-2295 — Submitted October 15, 2008 — Decided September 30, 2009.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Union County,

No. 14-07-11, 173 Ohio App.3d 487, 2007-Ohio-5773.

_____

SYLLABUS OF THE COURT

R.C. 4511.19(A)(2) does not violate the Fourth Amendment to the United
States Constitution or Section 14, Article I of the Ohio
Constitution.

_____

LANZINGER, J.

{¶ 1} In this case, we consider the constitutionality of R.C. 4511.19(A)(2), which requires the imposition of criminal penalties upon certain persons who refuse to consent to chemical testing after being arrested for operating a motor vehicle while under the influence of alcohol or a drug of abuse ("DUI").[1] We hold that R.C. 4511.19(A)(2) does not violate the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution.

**I. Factual and Procedural Background**

_____

1. "DUI" seems to be the more popular term, but "OMVI" (operating a motor vehicle while intoxicated) and "OVI" (operating a vehicle while under the influence) are also used to refer to these offenses.

{¶ 2} In the early morning hours of September 8, 2006, Deputy Kelly S. Nawman stopped a car after she saw it cross the center line by a tire's width. Upon approaching the vehicle, she detected a strong scent of intoxicants. Corey Hoover, the appellee and cross-appellant in this case, was the driver. He admitted to having drunk some alcohol before driving, and he performed poorly on the field sobriety tests. Hoover was then arrested and read his *Miranda* rights. After being taken to the Union County Sheriff's Office, he was asked to submit to a breath-alcohol test, but he refused.

{¶ 3} Hoover was charged with violating R.C. 4511.19(A)(2), which enhances the sentence for a DUI conviction if the offender refuses to submit to a chemical test and has been convicted of a DUI violation within the past 20 years. Hoover pleaded not guilty to the charge and moved for dismissal, claiming that the refusal provision and its corresponding sentence enhancement violated his constitutional rights under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution and further violated his right to due process under the United States and Ohio Constitutions.

{¶ 4} The trial court overruled the motion to dismiss, and Hoover entered a no-contest plea. The court found Hoover guilty, and because he had a prior DUI conviction within the previous six years, sentenced him to 60 days in jail (with 40 days suspended) under R.C. 4511.19(G)(1)(b)(ii), which requires imposition of a jail term of at least 20 days upon a defendant who violates R.C. 4511.19(A)(2) and has a previous DUI conviction within the past six years. If Hoover had refused to consent to a chemical test but had been convicted of DUI under R.C. 4511.19(A)(1), which does not include the element of refusing to consent, his mandatory minimum jail time would have been ten days. The trial court stayed the sentence pending Hoover's appeal.

{¶ 5} On October 29, 2007, the Third District Court of Appeals reversed the trial court, in part. It found that the enhanced sentencing under R.C.

4511.19(G)(1)(b)(ii) for a violation of R.C. 4511.19(A)(2) unconstitutionally punished Hoover for asserting his right to decline a search. The court severed from R.C. 4511.19(G)(1)(b)(ii) the portion of the statute that set forth the penalty for a violation of R.C. 4511.19(A)(2), thereby omitting a sentence provision for a violation of R.C. 4511.19(A)(2). The court held: "Since no sentence is provided, the statute must be interpreted against the state, and the defendant is entitled to the lesser sentence of all of the offenses which are sentenced pursuant to R.C. 4511.19(G)(1)(b). Because of the prior conviction, the defendant will properly be sentenced under R.C. 4511.19(G)(1)(b)(i)." *State v. Hoover*, 173 Ohio App.3d 487, 2007-Ohio-5773, 878 N.E.2d 1116, ¶ 8. That statute imposes a mandatory minimum jail term of ten days on a defendant with a DUI conviction within the last six years. Thus, the appellate court affirmed Hoover's conviction for a violation of R.C. 4511.19(A)(2), but reversed the trial court's imposition of the sentence imposed pursuant to R.C. 4511.19(G)(1)(b)(ii).

**{¶ 6}** Both parties appealed. The state argues that the court of appeals erred in finding the sentence enhancement unconstitutional; Hoover argues that his conviction should have been overturned because the court should have declared R.C. 4511.19(A)(2) unconstitutional in its entirety, rather than just the related sentencing enhancement contained in R.C. 4511.19(G)(1)(b)(ii).

**{¶ 7}** The case is now before us upon the acceptance of a discretionary appeal and cross-appeal. *State v. Hoover,* 117 Ohio St.3d 1496, 2008-Ohio-2028, 885 N.E.2d 954.

## II. Law and Analysis

**{¶ 8}** We first acknowledge that statutes enjoy a strong presumption of constitutionality. *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 6; *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552. A statute will be upheld unless the challenger can meet the burden of establishing

beyond a reasonable doubt that the statute is unconstitutional. *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 29; *Collier* at 269.

### A. The Criminal Statute

{¶ 9} Hoover argues that R.C. 4511.19(A)(2) [2] violates his rights under the federal and state constitutions. The statute provides:

{¶ 10} "No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or a municipal OVI offense shall do both of the following:

{¶ 11} "(a) Operate any vehicle * * * within this state while under the influence of alcohol, a drug of abuse, or a combination of them;

{¶ 12} "(b) Subsequent to being arrested for operating the vehicle * * *, being asked by a law enforcement officer to submit to a chemical test or tests under [R.C. 4511.191], and being advised by the officer in accordance with [R.C. 4511.192] of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests."

{¶ 13} There are three elements of a charge brought pursuant to R.C. 4511.19(A)(2): (1) a DUI conviction within 20 years of the current violation, (2) operation of a motor vehicle while under the influence of alcohol or drugs, and (3) a refusal to submit to a chemical test while under arrest for the current DUI. R.C. 4511.19(A)(1)'s only element is the operation a motor vehicle while under the influence of alcohol or drugs.

### B. The Implied-Consent Statute

{¶ 14} R.C. 4511.19(A)(2) contains references to R.C. 4511.191, Ohio's implied-consent statute. As part of obtaining the privilege to drive in Ohio, a

---

2. Citations to R.C. 4511.19(A)(2) throughout this opinion refer to the version in effect on September 8, 2006, the date of Hoover's offense. Sub.S.B. No. 8, Baldwin's Ohio Legislative Service Annotated (Vol.3, 2006), L-1258, L-1306. The current version is substantively similar.

driver implicitly consents to a search, through means of a chemical test, to determine the amount of intoxicating substances in the driver's body, upon the driver's arrest for DUI. R.C. 4511.191(A)(2) states:

{¶ 15} "Any person who operates a vehicle * * * within this state * * * shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, or urine to determine the alcohol, drug of abuse, controlled substance, metabolite of a controlled substance, or combination content of the person's whole blood, blood serum or plasma, breath, or urine if arrested for a violation of division (A) or (B) of [R.C. 4511.19] * * *."

{¶ 16} Furthermore, under R.C. 4511.191(B), every driver, regardless of previous offenses, also faces an administrative license suspension ("ALS") for failing to submit to a chemical test upon an arresting officer's reasonable belief of a DUI violation. The penalties for refusing to submit to a test are set forth in R.C. 4511.191(B) and run the range from a one-year suspension for first-time offenders, to a five-year suspension for persons who have refused a chemical test three or more times within six years of the current offense. Under the current version of R.C. 4511.191(B), which was not in effect at the time of Hoover's arrest, there is also a difference in degree of penalty for persons, like Hoover, who have had a DUI conviction within six years of the current offense—they face a two-year license suspension for failure to submit to testing, regardless of whether they had previously refused a test.

{¶ 17} In *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675, paragraph one of the syllabus, this court found the implied-consent statute to be constitutional:

{¶ 18} "Section 4511.191, Revised Code, does not violate the search and seizure provision of the Fourth Amendment, nor the self-incrimination clause of the Fifth Amendment to the United States Constitution by providing that any operator of a motor vehicle upon the public highways in this state shall be deemed

to have given consent to a chemical test to determine the alcoholic content of his blood if arrested for the offense of driving while under the influence of alcohol. (*Schmerber v. California* [1966], 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908]; *Westerville v. Cunningham* [1968], 15 Ohio St.2d 121 [44 O.O.2d 119, 239 N.E.2d 40], applied.)"

{¶ 19} The United States Supreme Court has held that if an officer has probable cause to arrest a driver for DUI, the result of an analysis of a blood sample taken over the driver's objection and without consent is admissible in evidence, even if no warrant had been obtained. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. The court noted that delaying the test to get a warrant would result in a loss of evidence. Id. at 770-771. Following *Schmerber*, we held that "[o]ne accused of intoxication has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication." *Westerville v. Cunningham* (1968), 15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40, paragraph two of the syllabus.

### C. Refusal to Consent

{¶ 20} To summarize, a driver's refusal to submit to chemical testing when arrested on probable cause for DUI can result in two consequences. The driver receives an ALS under R.C. 4511.191(B), and if the driver is convicted of the DUI charge and had a previous DUI conviction in the past 20 years, his or her sentence will be enhanced under R.C. 4511.19(G).

{¶ 21} It is crucial to note that the refusal to consent to testing is not, itself, a criminal offense. The activity prohibited under R.C. 4511.19(A)(2) is operating a motor vehicle while under the influence of drugs or alcohol. A person's refusal to take a chemical test is simply an additional element that must be proven beyond a reasonable doubt along with the person's previous DUI conviction to distinguish the offense from a violation of R.C. 4511.19(A)(1)(a). Hoover's conviction under R.C. 4511.19(A)(2) meant that the mandatory

minimum jail term increased from ten days, the mandatory minimum for R.C. 4511.19(A)(1)(a), to 20 days. R.C. 4511.19(G)(1)(b)(i) and (ii).

{¶ 22} Hoover contends, however, that he has a constitutional right to revoke his implied consent and that being forced by threat of punishment to submit to a chemical test violates his rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, which provide that persons, houses, and effects are protected against unreasonable search and seizure. However, Hoover has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication. See *Cunningham*, 15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40, paragraph two of the syllabus; *Schmerber*, 384 U.S. at 770-771, 86 S.Ct. 1826, 16 L.Ed.2d 908. Asking a driver to comply with conduct he has no right to refuse and thereafter enhancing a later sentence upon conviction does not violate the constitution.

{¶ 23} Furthermore, the request to submit to a chemical test does not occur until after probable cause to arrest exists. In this case, the arresting officer pulled Hoover over after she saw him drive across the center line. She smelled a strong odor of intoxicants as she approached his car. Hoover admitted that he had been drinking. He then performed poorly on field sobriety tests. Because R.C. 4511.19(A)(2) requires that an officer have probable cause to arrest for DUI before requesting that a driver undergo chemical testing and because the United States Supreme Court has held that exigent circumstances justify the warrantless seizure of a blood sample in DUI cases, *Schmerber*, it is clear that R.C. 4511.19(A)(2) does not violate the Fourth Amendment to the United States Constitution or Article I, Section 14 of the Ohio Constitution.

{¶ 24} This court's statement in *State v. Gustafson* (1996), 76 Ohio St.3d 425, 439, 668 N.E.2d 435, referring to an ALS suspension for refusing to consent, also holds true under these circumstances: "[T]he act of refusing a chemical test for alcohol, standing alone, does not constitute a criminal 'offense' of any kind.

Ohio police officers are not statutorily authorized to randomly demand chemical alcohol testing of Ohio drivers in the absence of an arrest for DUI, and there is no criminal charge which can be lodged for the act of refusing a chemical test. Nor does R.C. 4511.191 authorize imposition of an ALS based solely on a driver's refusal to take a chemical test. Rather, the implied consent statute authorizes a police officer to ask a driver to undergo a chemical test for alcohol *only where the officer has first determined that probable cause exists for arrest for the offense of driving while intoxicated*." (Emphasis sic.)

{¶ 25} An administrative license suspension is an automatic consequence of a refusal to take a chemical test. R.C. 4511.191(B)(1). But imposing an ALS for refusal to take a chemical test does not preclude using the refusal as an element to enhance a DUI sentence. In *Gustafson*, we held that the punishment allowed under Ohio's implied-consent law did not violate the constitutional principle of double jeopardy. 76 Ohio St.3d 425, 668 N.E.2d 435. Both an ALS and a criminal prosecution may result from driving under the influence of drugs or alcohol and refusing to take the chemical test. After a DUI conviction, however, the ALS terminates, and the license suspension becomes part of the DUI sentence. Id. at paragraphs four and five of the syllabus. We recognized in *Gustafson* that both administrative regulation and criminal prosecution play a part in ensuring safety.

{¶ 26} Furthermore, we have held that "[i]n Ohio, a license to operate a motor vehicle is a privilege, and not an absolute property right." *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97, paragraph two of the syllabus. " 'The state has the right under its sovereign power to control automobile traffic by reasonable regulations of the circumstances under which its citizens may be licensed to operate a motor vehicle and to adopt appropriate provisions to insure competence and care on the part of licensees, to protect others using the highways; and any appropriate means adopted does not deny to a person

subject to its provisions any constitutional rights under the Constitution of the United States or the state of Ohio.' " Id. at 51, 554 N.E.2d 97, fn. 6, quoting *State v. Newkirk* (1968), 21 Ohio App.2d 160, 165, 50 O.O.2d 253, 255 N.E.2d 851.

{¶ 27} The subsection under which Hoover was charged, R.C. 4511.19(A)(2), was added to the Revised Code by Am.Sub.H.B. No. 163, 150 Ohio Laws, Part III, 4620, 4705, effective September 23, 2004. Its enactment shows the legislature's concern with the problems of both repeat drunk drivers and chemical-test refusals. The General Assembly addressed these problems by enhancing the sentence for a DUI conviction when the driver refuses to be tested and has previously been convicted of a DUI.

{¶ 28} The dissent argues that this court has already answered the question before us in *Wilson v. Cincinnati* (1976), 46 Ohio St.2d 138, 75 O.O.2d 190, 346 N.E.2d 666. That case, however, is readily distinguishable. First, *Wilson* involved a homeowner's failure to tender a certificate of housing inspection to a prospective buyer, hardly analogous to a DUI arrest. Second, property owners in the city of Cincinnati were required by city ordinance to have their property inspected by city officials before any sale of their property. An inspection was required even if there was no indication that the property violated any provision of the building code. Failure to have the property inspected exposed the owners to criminal sanctions. Unlike the property inspections in *Wilson*, the chemical test under discussion is not required until after probable cause to arrest exists. Finally, the property owners in *Wilson* had a right to refuse to consent to the search of their homes. But as we previously stated, Hoover did not have a right to refuse to take a reasonably reliable chemical test for intoxication. See *Cunningham*, 15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40, paragraph two of the syllabus.

{¶ 29} Our conclusion that R.C. 4511.19(A)(2) does not violate the Fourth Amendment to the United States Constitution is also in line with decisions from

other jurisdictions. See *State v. Netland* (Minn.2009), 762 N.W.2d 202; *Rowley v. Virginia* (2006), 48 Va.App. 181, 629 S.E.2d 188; *Burnett v. Anchorage* (Alaska App.1984) 678 P.2d 1364.

### III. Conclusion

**{¶ 30}** We hold that R.C. 4511.19(A)(2) does not violate the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution. We therefore affirm the portion of the court of appeals judgment upholding Hoover's conviction under R.C. 4511.19(A)(2), but reverse the court of appeals judgment with respect to sentencing. We reinstate the trial court's sentence imposed upon Hoover pursuant to R.C. 4511.19(G)(1)(b)(ii).

Judgment affirmed in part
and reversed in part.

LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER and O'DONNELL, JJ., dissent.

————————————

**PFEIFER, J., dissenting.**

**{¶ 31}** The majority's interpretation of R.C. 4511.19(A)(2) signals a fork in the road. R.C. 4511.19(A)(2) veers from the traditional administrative punishment for refusal to consent to a chemical test upon an arrest for DUI and goes down a separate path, beyond the regulation of licensing; for certain DUI arrestees, R.C. 4511.19(A)(2) criminalizes the refusal to take a chemical test. Since imposing a criminal penalty for refusing to consent infringes on a suspect's rights under Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution, I dissent.

**{¶ 32}** This court's previous cases regarding sanctions for a DUI defendant's failure to consent to chemical tests have all involved license suspensions: "This court has historically and repeatedly characterized driver's license suspensions imposed pursuant to Ohio's implied consent statutes as being

civil in nature and remedial in purpose." *State v. Gustafson* (1996), 76 Ohio St.3d 425, 440, 668 N.E.2d 435. Moreover, in *Gustafson*, this court held that "the act of refusing a chemical test for alcohol, standing alone, does not constitute a criminal 'offense' of any kind." Id. at 439.

**{¶ 33}** The majority states in ¶ 21, "It is crucial to note that the refusal to consent to testing is not, itself, a criminal offense." Rather than crucial, that point is insignificant: R.C. 4511.19(A)(2) makes the refusal to consent to a chemical test a *central element* of a criminal offense. Without a failure to consent, there is no crime committed under R.C. 4511.19(A)(2). The majority writes in ¶ 21, "The activity prohibited under R.C. 4511.19(A)(2) is operating a motor vehicle while under the influence of drugs or alcohol." Wrong: operating a motor vehicle while under the influence is the activity prohibited under R.C. 4511.19(A)(1). R.C. 4511.19(A)(2) prohibits persons with a DUI conviction within the preceding 20 years from refusing to consent to a chemical test *after* being arrested for operating a vehicle while under the influence of drugs or alcohol. The simple fact is that for defendants like Hoover, the failure to consent results in jail time.

**{¶ 34}** The majority relies heavily upon this court's decision in *Westerville v. Cunningham* (1968), 15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40, wherein the court held that "[o]ne accused of intoxication has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication." Id. at paragraph two of the syllabus. But that case concerned a defendant's assertion of his *Fifth* Amendment rights; the defendant in *Cunningham* argued that using his refusal to submit to a chemical test as evidence against him in a trial would violate his right not to incriminate himself. Hoover asserts here that R.C. 4511.19(A)(2) violates his *Fourth* Amendment rights, and his is not an evidentiary concern – his *liberty* is at stake.

**{¶ 35}** This court has previously answered the question whether a person can face *criminal* sanctions for failure to consent to a search. In *Wilson v.*

*Cincinnati* (1976), 46 Ohio St.2d 138, 75 O.O. 2d 190, 346 N.E.2d 666, this court held that the Fourth Amendment prohibits the imposition of criminal penalties upon a person who refuses to submit to a warrantless search. As here, the defendant in *Wilson* "faced * * * a serious dilemma; either [she had to] consent to a warrantless search or face the possibility of a criminal penalty." *Wilson* at 143. The ordinance at issue in *Wilson* required a homeowner, prior to entering into a contract for the sale of her property, to tender to the prospective buyer a certificate of housing inspection. A seller's failure to comply with the certificate requirement rendered the seller subject to a criminal penalty. Fourth Amendment rights were implicated because sellers could obtain the certificate only by allowing a city inspector to access their property. Thus, in order to sell his or her property, a seller had to consent to a warrantless search or face the possibility of a criminal penalty. This court held in *Wilson*:

{¶ 36} "Where a municipal ordinance requires the owner of real property to tender a certificate of housing inspection to a prospective buyer, and such certificate may be obtained only by allowing a warrantless inspection of the property, the imposition of a criminal penalty upon the owner's failure to tender the certificate violates the owner's rights under the Fourth Amendment to the United States Constitution." *Wilson*, 46 Ohio St.2d at 138, 75 O.O.2d 190, 346 N.E.2d 666, at syllabus.

{¶ 37} As this court noted in *Wilson*, "[g]enerally, a search to which an individual consents meets Fourth Amendment requirements. *Katz v. United States* (1967), 389 U.S. 347, 358 [88 S.Ct. 507, 19 L.Ed.2d 576]." *Wilson*, 46 Ohio St.2d at 143, 75 O.O.2d 190, 346 N.E.2d 666. However, consent given in response to coercion does not meet Fourth Amendment requirements: "[A] valid consent involves a waiver of constitutional rights and cannot be lightly inferred; hence, it must be 'voluntary and uncoerced, either physically or psychologically.' *United States v. Fike* (C.A.5, 1972), 449 F.2d 191, 193; *Phelper v. Decker* (C.A.5,

1968), 401 F.2d 232; *Cipres v. United States* (C.A.9, 1965), 343 F.2d 95." *Wilson* at 143-144.

{¶ 38} In *Wilson*, this court held that the coercive nature of a potential criminal penalty negated any consent to search: "In the case before us, the coercion represented by the sole alternative of possible criminal prosecution clearly negates any 'consent' which may be inferred from the allowance of the inspection and, therefore, the validity of such searches upon the basis of consent is not sustainable." *Wilson* at 144.

{¶ 39} This case is not about whether police officers could have legally executed a chemical test on Hoover. A search can meet the requirements of the Fourth Amendment even if it is executed without a suspect's consent. Officers could have sought a warrant to obtain a test. Further, the United States Supreme Court has held that when a defendant refuses to consent to a taking of his blood for chemical analysis, a blood sample taken over his objection and without his consent is admissible in evidence, even if no warrant had been obtained, if the officer had probable cause to arrest for DUI. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. *Schmerber* thus protects the state's ability to gather evidence to prove its case without obtaining a defendant's consent. The defendant can still refuse to consent, but his failure to consent lacks strategic value because the state can find another way to acquire the necessary evidence. That is different from the majority's claim in this case that a defendant has no right to assert a refusal to consent. *Schmerber* exists *because* a defendant has the right to refuse consent.

{¶ 40} The issue here is whether the state can criminalize a person's failure to consent to a warrantless search or, in other words, force a consent to search through the coercive power of threatened jail time. Although consent is implied by R.C. 4511.191, consent can be withdrawn. "A suspect may * * *

delimit as he chooses the scope of the search to which he consents." *Florida v. Jimeno* (1991), 500 U.S. 248, 252, 111 S.Ct. 1801, 114 L.Ed.2d 297.

**{¶ 41}** Imposing criminal sanctions for failure to consent goes far beyond the state's power—recognized in *Gustafson*, 76 Ohio St.3d 425, 668 N.E.2d 435, and other cases—to regulate the licensure of drivers. As in *Wilson*, the statute at issue herein imposes a codified dilemma—consent to a warrantless search or face the possibility of a criminal penalty—and thus amounts to coercion. R.C. 4511.19(A)(2) therefore violates defendants' rights under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. Because R.C. 4511.19(A)(2) criminalizes a suspect's failure to consent to a chemical test, I would find the statute unconstitutional.

MOYER, C.J., and O'DONNELL, J., concur in the foregoing opinion.

_____

Richard Cordray, Attorney General, and Benjamin C. Mizer, Solicitor General; and Tim M. Aslaner, Marysville Law Director, for appellant and cross-appellee.

Jonathan T. Tyack, for appellee and cross-appellant.

Victor R. Perez, Chief Prosecutor for the city of Cleveland, supporting the position of the state for amicus curiae city of Cleveland.

_____