[Cite as *State v. Mattix*, 2014-Ohio-5319.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  9-14-10

      v.

MATTHEW MATTIX,                        O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Marion Municipal Court
Trial Court No. TRC 13 05949

**Judgment Affirmed**

Date of Decision:   December 1, 2014

APPEARANCES:

    *Thomas A. Mathews* **for Appellant**

    *Steven E. Chaffin*  **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Matthew Mattix ("Mattix"), appeals the Marion Municipal Court's February 28, 2014 judgment entry of sentence. He argues that the trial court erred in denying his motion to suppress. For the reasons that follow, we affirm.

{¶2} On May 26, 2013 at 7:21 p.m., Ohio State Highway Patrol Trooper Michael Smith ("Trooper Smith") was dispatched to a one-car accident at 1689 Smeltzer Road in Marion, Ohio. (Doc. No. 28); (Oct. 17, 2013 Tr. at 9-10). When Trooper Smith arrived, the driver of the crashed vehicle had fled the scene. (*Id.*); (*Id.* at 10). After running the vehicle's license plates, Trooper Smith identified Mattix as its owner. (*Id.*); (*Id.* at 11). Witnesses of the crash described the driver of the vehicle as a 30-year-old, white male wearing shorts and a dark t-shirt, which matched Mattix's description. (Oct. 17, 2013 Tr. at 11). The witnesses also told Trooper Smith that the driver of the crashed vehicle was picked up by a gold-colored Honda Pilot, which was later determined to be registered to Mattix's wife. (*Id.* at 13); (Doc. No. 28). Based on the witnesses' descriptions, other law enforcement officers began searching for Mattix and the Honda Pilot. (Oct. 17, 2013 Tr. at 13).

**{¶3}** While other law enforcement officers were searching for Mattix and the Honda Pilot, Trooper Smith conducted a crash investigation at the Smeltzer Road scene. (*Id.* at 12). Trooper Smith found open and unopened beer cans in Mattix's vehicle. (*Id.* at 16-17). According to Trooper Smith, the open beer cans were still cold to the touch and had beer in them. (*Id.*). Trooper Smith also found beer cans on the ground adjacent to Mattix's vehicle. (*Id.*). Witnesses told Trooper Smith that Mattix was "stumbling" when he got out of his vehicle. (*Id.* at 13, 16).

**{¶4}** After another law enforcement officer located the Honda Pilot in the parking lot of Marion General Hospital and positively identified Mattix, Trooper Smith was instructed to go to Marion General Hospital. (*Id.* at 14-15). When Trooper Smith made contact with Mattix at Marion General Hospital, he smelled the odor of alcoholic beverage on Mattix's breath. (*Id.*). Later, Mattix told another law enforcement officer that he consumed eight to ten beers that day. (*Id.* at 16).

**{¶5}** Because Mattix was already at the hospital receiving treatment when Trooper Smith made contact with him, he was unable to perform any of the typical field-sobriety tests. (*Id.*). As a result, Trooper Smith read Mattix the Bureau of Motor Vehicles ("BMV") Form 2255. (*Id.* at 17). After reading Mattix the BMV Form 2255, Trooper Smith told him that he was not under arrest. (*Id.*). According

to Trooper Smith, he did not believe he had enough evidence to arrest Mattix without the results of a blood test. (*Id.*). At that same time, hospital staff were preparing Mattix to be transferred to Riverside Hospital in Columbus, Ohio due to the severity of his injuries. (*Id.* at 15). Given the circumstances, Trooper Smith informed Mattix that he was going take a blood sample. (*Id.* at 18). Mattix did not object to allowing the blood sample to be taken. (*Id.* at 18-19, 20-21). A Marion General Hospital lab technician took Mattix's blood sample using the Ohio State Highway Patrol-provided blood-sample kit. (*Id.* at 19); (Doc. No. 28). Trooper Smith read Mattix the BMV Form 2255 at 8:35 p.m. and the sample was obtained at 8:49 p.m. (Oct. 17, 2013 Tr. at 20).

{¶6} The blood sample was submitted to the Ohio Bureau of Criminal Investigation for testing, and Trooper Smith received the results on July 12, 2013. (*Id.* at 22). The results of the blood test showed that Mattix had a blood-alcohol concentration ("BAC") of .230 grams by weight per unit volume of alcohol in Mattix's whole blood. (Doc. No. 1). After Trooper Smith received the blood-test results, Mattix was charged on July 16, 2013 with one count each of: operating a vehicle while under the influence ("OVI") in violation of R.C. 4511.19(A)(1)(a); driving with a BAC of .17 grams or greater by weight per unit volume of alcohol in the person's whole blood in violation of R.C. 4511.19(A)(1)(f); failure to wear a

safety belt in violation of R.C. 4513.263(B)(1); and failure to control in violation of R.C. 4511.202. (*Id.*).

{¶7} On July 22, 2013, Mattix pled not guilty to the charges. (Doc. No. 5). On August 21, 2013, Mattix filed a motion to suppress. (Doc. No. 7). Mattix argued, in part, that the blood test[1] was improperly administered because he was not arrested under provision (A) or (B) of R.C. 4511.19 as required by R.C. 4511.191.[2] (*Id.*).[3] The State filed a memorandum in opposition to Mattix's motion to suppress on October 15, 2013. (Doc. No. 12). The State argued that Mattix consented to the search and was not coerced to consent to the search. (*Id.* at 1-2). In the alternative, the State argued that if the trial court determined that reading the BMV Form 2255 coerced Mattix to consent to the search, exigent circumstances justified the warrantless search. (*Id.* at 3).

{¶8} The trial court held a suppression hearing on October 17, 2013. (Oct. 17, 2013 Tr. at 3); (Jan. 23, 2014 JE, Doc. No. 15). On January 23, 2014, the trial court denied Mattix's motion to suppress. (Jan. 23, 2014 JE, Doc. No. 15).

---

[1] Mattix incorrectly referred to the test as a urine test in his motion to suppress. (Doc. No. 7). (*See also* Oct. 17, 2013 Tr. at 3-4).

[2] "Any person who operates a vehicle, streetcar, or trackless trolley upon a highway or any public or private property used by the public for vehicular travel or parking within this state or who is in physical control of a vehicle, streetcar, or trackless trolley shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, or urine to determine the alcohol, drug of abuse, controlled substance, metabolite of a controlled substance, or combination content of the person's whole blood, blood serum or plasma, breath, or urine if *arrested* for a violation of division (A) or (B) of section 4511.19 of the Revised Code, section 4511.194 of the Revised Code or a substantially equivalent municipal ordinance, or a municipal OVI ordinance." (Emphasis added.) R.C. 4511.191(A)(2).

[3] At the October 17, 2013 hearing, Mattix informed the trial court that his first argument, regarding whether there was probable cause to stop him, in his motion to suppress was not applicable to this case, and, therefore, not in issue. (Oct. 17, 2013 Tr. at 4).

{¶9} On February 28, 2014, at a change-of-plea hearing, Mattix pled no-contest to violating R.C. 4511.19(A)(1)(f). (Feb. 28, 2014 JE, Doc. No. 2). The trial court dismissed the other charges at the State's request. (Feb. 28, 2014 JE, Doc. No. 4).[4] Mattix was convicted of violating R.C. 4511.19(A)(1)(f), which was his second offense of that same statute, and sentenced to two years of community control. (Feb. 28, 2014 JE, Doc. No. 2). Mattix's community-control sanctions included 180 days in jail with 160 days suspended, a fine of $1,000 with $250 suspended, and a three-year license suspension, and the trial court ordered that he undergo an alcohol and drug assessment. (*Id.*).

{¶10} Mattix filed his notice of appeal on March 12, 2014. (Doc. No. 33). He raises one assignment of error for our review.

### Assignment of Error

**The trial court erred to the prejudice of defendant-appellant by denying his motion to suppress the legal whole blood draw evidence obtained by law enforcement in violation of the Fourth and Fourteenth Amendments to the United States [sic] and RC 4511.19 and 4511.191 (*sic*).**

{¶11} In his sole assignment of error, Mattix argues that the trial court erred in denying his motion to suppress. Specifically, Mattix argues that the results of

---

[4] The trial court initially dismissed only the violation of R.C. 4511.19(A)(1)(a) in its February 28, 2014 judgment entry. (*See* Feb. 28, 2014 JE, Doc. No. 4). However, the trial court dismissed the violations of R.C. 4513.263(B)(1) and R.C. 4511.202 during Mattix's sentencing hearing. The trial court filed a nunc pro tunc judgment entry on September 11, 2014 indicating that the court dismissed the violations of R.C. 4513.263(B)(1) and R.C. 4511.202. (*See* Sept. 11, 2014 JE).

the blood test should be excluded because the blood test was not obtained pursuant to a warrant or lawful arrest.

{¶12} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *See State v. Carter*, 72 Ohio St.3d 545, 552 (1995).

{¶13} When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo; and therefore, we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶14} Because neither party is challenging the trial court's findings of fact, we review the trial court's decision as a matter of law that Mattix challenges in this appeal. We hold that, in this particular case, the warrantless search and seizure of Mattix's blood was justified by exigent circumstances and reasonable under the Fourth Amendment to the United States Constitution. Therefore, the trial court did not err in dismissing Mattix's motion to suppress.

{¶15} The trial court concluded that the search and seizure of Mattix's blood was reasonable after it determined that there were exigent circumstances justifying taking Mattix's blood without a warrant. (Jan. 23, 2014 JE, Doc. No. 15). More specifically, the trial court concluded that there was probable cause that Mattix violated R.C. 4511.19 and that the exigency stemmed not only from the swift dissipation of alcohol from a person's blood stream, but also from the fact that Mattix was to be transported by medical personnel to another medical facility 60 minutes away. (*Id.* at 5).

{¶16} The crux of Mattix's argument contends that the warrantless search and seizure of his blood violated his constitutional rights because he was not constructively arrested pursuant to Trooper Smith's reading of the BMV Form 2255. He argues that the implied consent statute does not apply since he was not arrested as required by the statute. We need not address that portion of his argument in light of our finding that exigent circumstances justified the warrantless search in this case.

{¶17} "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant" unless an exception to the warrant requirement applies. *State v. Moore*, 90 Ohio St.3d 47, 49 (2000), citing *Katz v. United States*, 389 U.S. 347, 357

(1967) and *State v. Brown*, 63 Ohio St.3d 349, 350 (1992). This court has noted that there are three criteria for a reasonable search:

> (1) the government must have a clear indication that incriminating evidence will be found; (2) the police officers must have a warrant, or, there must be exigent circumstances, such as the imminent destruction of evidence; and (3) the method used to extract the evidence must be reasonable and must be performed in a reasonable manner.

*State v. Fisher*, 3d Dist. Allen No. 1-93-71, 1996 WL 65487, *3 (Feb. 13, 1996), citing *Schmerber v. California*, 384 U.S. 757, 770-772 (1966).

{¶18} Here, Trooper Smith had a clear indication that incriminating evidence would be found showing that Mattix violated R.C. 4511.19. *See Schmerber* at 770 ("In the absence of a clear indication that in fact such evidence will be found, the[] fundamental human interests [in human dignity and privacy] require law officers to suffer the risk that such evidence may disappear unless there is an immediate search."). Recognizing constitutional constraints, "the Revised Code permits a law enforcement official to request that blood be taken from a person and analyzed for a BAC level when that officer has 'reasonable grounds to believe the person to have been operating a vehicle upon a highway * * * while under the influence of alcohol * * * or with a prohibited concentration of

alcohol in the blood[.]'" *State v. Howell*, 3d Dist. Logan No. 8-03-21, 2004-Ohio-538, ¶ 7, citing R.C. 4511.191(A).

{**¶19**} Trooper Smith had reasonable grounds to believe Mattix had been operating a vehicle on a highway while under the influence of alcohol or with a prohibited concentration of alcohol in his blood. *See id.* at ¶ 9 (the requirement that a law enforcement officer have reasonable grounds to believe that the person whose blood is being drawn was operating a vehicle under the influence reflects the United States Supreme Court's holding in *Schmerber* that there must be a clear indication that, in fact, such evidence will be found). Specifically, Trooper Smith found open and unopened beer cans in and around Mattix's crashed vehicle, including some that still had beer in them and were cold to the touch; witnesses described Mattix as stumbling when he got out of the crashed vehicle; Trooper Smith observed the odor of alcoholic beverage on Mattix's breath while interviewing him; and Mattix admitted to consuming eight to ten beers that day. (Oct. 17, 2013 Tr. at 13, 16-17). Further, Trooper Smith testified that there were no other road conditions that would have contributed to the crash—that is, the road was not slippery and there was no indication of that there was an animal or other distraction in the road. (*Id.* at 16, 28-29). These facts provided Trooper Smith a clear indication that incriminating evidence would be found showing that Mattix violated R.C. 4511.19.

**{¶20}** Second, although Trooper Smith indicated that Mattix was not under arrest at the time of the search, exigent circumstances justified the warrantless search and seizure of Mattix's blood. There are certain situations that present exigent circumstances that justify a warrantless search and seizure. *Moore*, 90 Ohio St.3d at 52. Exigencies "make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Missouri v. McNeely*, __ U.S. __, 133 S.Ct. 1552, 1558 (2013). "[T]he United States Supreme Court has held that exigent circumstances justify the warrantless seizure of a blood sample in DUI[5] cases." *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, ¶ 23, citing *Schmerber*, 384 U.S. at 772.

**{¶21}** In *Schmerber*, the United States Supreme Court concluded that the warrantless search and seizure of Schmerber's blood was constitutional following his suspected involvement in an alcohol-related automobile accident. *Schmerber* at 758. Specifically, the United States Supreme Court determined that the circumstances—namely, the rapid dissipation of alcohol from the blood and the time it took to transport Schmerber to the hospital and investigate the accident scene—threatened destruction of the evidence, which created an exigency justifying the warrantless search and seizure of Schmerber's blood. *Id.* at 770-771.

---

[5] "DUI" is a term sometimes used to refer to an OVI offense. *See State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, ¶ 1, fn. 1.

{¶22} Similarly, the United States Supreme Court recently addressed the issue of whether the rapid dissipation of alcohol from the blood, alone, presents an exigent circumstance. *McNeely* at 1556. In its decision, the United States Supreme Court concluded that the natural dissipation of alcohol from the blood does not present a per se exigency; rather, the totality of the circumstances must be addressed on a case-by-case basis to determine whether a warrantless search was justified. *Id.* at 1563.

{¶23} Here, the record demonstrates factors, other than the natural dissipation of alcohol from the blood, which suggested there was an emergency that threatened the destruction of the evidence. The record demonstrates that Mattix's actions alone created the exigency. First, because Mattix left the scene of the crash, it took Trooper Smith approximately one hour to locate Mattix to interview him. (*See* Oct. 17, 2013 Tr. at 9-10, 20). When Trooper Smith was able to make contact with Mattix, he was in a hospital receiving treatment for his injuries, making it impossible for Trooper Smith to conduct a traditional field-sobriety test. *Compare Schmerber* at 769-772. That hospital staff were preparing Mattix to be transferred to another hospital 60 minutes away further demonstrated the exigency. (Oct. 17, 2013 Tr. at 15).

{¶24} For the results of a blood test to be admissible in a criminal prosecution of R.C. 4511.19 (A) or (B), the statute requires the chemical analysis

of the blood to be completed within *three hours* of the alleged time of the violation. R.C. 4511.19(D)(1)(b). The accident occurred at approximately 7:21 p.m., and Trooper Smith was able to make contact with Mattix shortly before he read him the BMV Form 2255 at 8:35 p.m. (Oct. 17, 2013 Tr. at 9, 20). Trooper Smith was aware that medical personnel were preparing to transfer Mattix to another hospital that was at least a 60-minute drive from Marion General Hospital. Factoring the time at which Mattix's transfer was to commence and whether there might be any other delays—traffic, medical, or otherwise—Trooper Smith's three-hour time limit was waning. Consequently, taking into consideration the totality of the circumstances, we conclude that Trooper Smith was confronted with an emergency that threatened the destruction of evidence.

{¶25} In fact, the set of circumstances presented by this case are the type of circumstances envisioned by the United States Supreme Court as so compelling that they justify a warrantless search. Trooper Smith was faced with the choice of either drawing Mattix's blood without a warrant or waiting to obtain a warrant and risk any evidence obtained from Mattix's blood being inadmissible pursuant to R.C. 4511.19(D)(1)(b) because it was drawn and analyzed outside of the three-hour time limit. Thus, Trooper Smith faced a true exigency.

{¶26} Third, the method and manner of the search were reasonable. Healthcare professionals at Marion General Hospital obtained Mattix's blood

sample using the Ohio State Highway Patrol's standardized blood-sample kit. *See State v. Hollis*, 5th Dist. Richland No. 12CA34, 2013-Ohio-2586, ¶ 33, citing *State v. Capehart*, 12th Dist. Fayette No. CA2010-12-035, 2011-Ohio-2602, ¶ 13 ("because the blood sample was drawn by trained medical personnel using medically acceptable procedures, it is clear that the method used to extract the evidence was reasonable and performed in a reasonable manner").

**{¶27}** Therefore, because Trooper Smith had a clear indication that incriminating evidence would be found from the blood sample, exigent circumstances justified the warrantless search and seizure of Mattix's blood, and the method and manner of the search were reasonable, Trooper Smith complied with the Fourth Amendment standards of reasonableness. *See Fisher*, 1996 WL 65487, at *3, citing *State v. Victor*, 76 Ohio App.3d 372, 377-379 (8th Dist.1991). As such, the trial court did not err in denying Mattix's motion to suppress.

**{¶28}** Mattix's assignment of error is, therefore, overruled.

**{¶29}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**