[Cite as *Univ. Hts. v. Crump*, 2015-Ohio-3348.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102315

---

# CITY OF UNIVERSITY HEIGHTS

### PLAINTIFF-APPELLEE

vs.

# SARA R. CRUMP

### DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Shaker Heights Municipal Court
Case No. 13 TRC 00053

**BEFORE:**   Stewart, J., Keough, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   August 20, 2015

**ATTORNEY FOR APPELLANT**

Mark S. O'Brien
Heights Medical Center Bldg.
2460 Fairmount Blvd., Suite 301B
Cleveland, OH 44106


**ATTORNEYS FOR APPELLEE**

William T. Doyle
David G. Oakley
City of University Heights Prosecutors
55 Public Square, Suite 2100
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} A jury found defendant-appellant Sara R. Crump guilty of operating a vehicle while intoxicated ("OVI") and failing to drive within lanes or continuous lines of traffic. In this appeal, Crump complains that: (a) the court erroneously amended the OVI count before submitting it to the jury, and (b) that there was insufficient evidence to prove that she did not drive within her lane of traffic. We find no error and affirm.

{¶2} Crump's first argument relates to the OVI charge. When stopped for the driving infraction, Crump refused to take a breath test. The city of University Heights charged Crump with violating University Heights Codified Ordinances 434.01(a)(2). That section states that no person, who within the previous 20 years has previously been convicted of an OVI violation, shall do both of the following: (a) operate any vehicle while under the influence of alcohol, and (b) refuse to submit to chemical or other tests to determine that person's level of intoxication after being asked by a law enforcement officer to submit to testing.

{¶3} Crump moved the court to grant her a Crim.R. 29(A) judgment of acquittal on the OVI count because the arresting officer was not the officer who read her a statement advising her of the consequences of refusing testing as required by Section 434.01(g)(6), which is substantially similar to R.C. 4511.192(A) ("[t]he *arresting* law enforcement officer shall" give advice concerning the implied consent to chemical tests and the failure to submit to testing (Emphasis added.)). Finding that it was not the arresting officer who read Crump the advisement about refusing to take chemical or other tests to determine

whether she was intoxicated, and finding that the ordinance required that the arresting officer do so, the court granted a judgment of acquittal on that part of the charge. The court found, however, that the city charged Crump with two separate offenses under University Heights Codified Ordinances 434.01(a)(2), so it amended what the court deemed to be the remaining charge pursuant to Crim.R. 7(D) to allow the first part of Section 434.01(a)(2) — driving while intoxicated — to go forward independently.

{¶4} The ticket issued to Crump listed sections "434.01A(2)A" and "434.01A(2)B" of the University Heights Codified Ordinances. Section 434.01(a)(2) states:

> No person who, within 20 years of the conduct described in division (a)(2)A of this section, previously has been convicted of or pleaded guilty to a violation of this division or a substantially equivalent State law or municipal ordinance, a violation of division (a)(1) or (b) of this section or a substantially equivalent State law or municipal ordinance, or any other equivalent offense shall do both of the following:
>
> A. Operate any vehicle within this Municipality while under the influence of alcohol, a drug of abuse, or a combination of them;
>
> B. Subsequent to being arrested for operating the vehicle as described in division (a)(2)A. of this section, being asked by a law enforcement officer to submit to a chemical test or tests under Ohio R.C. 4511.191 or any substantially equivalent municipal ordinance, and being advised by the officer in accordance with Ohio R.C. 4511.192 or any substantially equivalent municipal ordinance of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶5} Apart from a difference in terminology referring to the "municipality" rather than the "state," Section 434.01(a)(2) is identical in substance to R.C. 4511.19(A):

> (2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty

to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:

(a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;

(b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶6} The Ohio Supreme Court has said that R.C. 4511.19(A)(2) is intended to "enhance[s] the sentence for a DUI conviction if the offender refuses to submit to a chemical test and has been convicted of a DUI violation within the past 20 years." *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 3. Crucially, "the refusal to consent to testing is not, itself, a criminal offense." *Id.* at ¶ 21. "A person's refusal to take a chemical test is simply an additional element that must be proven beyond a reasonable doubt along with the person's previous DUI conviction to distinguish the offense from a violation of R.C. 4511.19(A)(1)(a) [operating a vehicle while intoxicated]." *Id.*

{¶7} The court stated on the record that it believed, consistent with the manner in which the arresting officer completed the citation, that Crump had been charged with two separate offenses under Section 434.01(a)(2): OVI [Section 434.01(a)(2)A] and refusing to submit to testing [Section 434.01(a)(2)B]. But, in fact, Section 434.01(a)(2), like R.C. 4511.19(A)(2), consists of a single OVI charge whose penalty is enhanced with proof that

the offender refused to submit to testing and had a previous OVI offense with the past 20 years. That Section 434.01(a)(2) charges a single offense is made clear by the language of the ordinance: no person "shall do both of the following": commit an OVI offense and refuse to submit to testing after being arrested for the OVI offense. The complaint thus charged a single offense; the court was incorrect in stating that it charged two separate offenses.

{¶8} Despite the court's error in characterizing Section 434.01(a)(2)B as charging two separate offenses, the city's failure of proof on the penalty enhancing part of the ordinance under Section 434.01(a)(2)B did not bar the court from amending the charge to Section 434.01(a)(1) and proceeding on the OVI alone.

{¶9} The Ohio Supreme Court considered a similar set of facts in *State v. Campbell*, 100 Ohio St.3d 361, 2003-Ohio-6804, 800 N.E.2d 356, holding that "[t]he amendment of a criminal charge from one subparagraph of R.C. 4511.19(A) to another subparagraph of the same subsection does not change the name and identity of the charged offense within the meaning of Crim.R. 7(D)." *Id*. at syllabus. The court cited with approval *State v. Spirko*, 59 Ohio St.3d 1, 570 N.E.2d 229 (1991), a case where a defendant claimed undue surprise because the state amended a charge to allege a violation of a different paragraph of the same statute, stating "'[i]t is clear that the state merely caused the correct section number to be applied to the indictment. The language itself was not changed, and it is unclear how defendant can claim that he was 'surprised' in any way.'" *Campbell* at ¶ 5, quoting *Spirko* at 21.

**{¶10}** Crump, citing *In re C.A.*, 8th Dist. Cuyahoga No. 93525, 2010-Ohio-3508, argues that the amendment prejudiced the defense because his trial preparation was specific to Section 434.01(a)(2). It is difficult to see how Crump could have been prejudiced. In *C.A.*, we held that an amendment of a rape allegation from forcible rape to rape by substantial impairment constituted a change in the identity of the crime because "they involve proving completely different elements, i.e., force as opposed to substantial impairment." *Id*. at ¶ 15.

**{¶11}** In this case, the amendment did nothing more than delete those aspects of Section 434.01(a)(2) that enhanced the penalty for an OVI offense when the offender refused to submit to testing. *See Hoover,* 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, at ¶ 3. With Section 434.01(a)(2)B, like R.C. 4511.19(A)(2)(b) as discussed in *Hoover*, constituting a sentence enhancement, the OVI charge remained the primary focus at trial, regardless of whether there was any penalty enhancement attached to the charge. Importantly, both Sections 434.01(a)(1)A and 434.01(a)(2)A are identically-worded: University Heights Codified Ordinances 434.01(a)(1)A states that "[n]o person shall operate any vehicle within this Municipality, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." So the amendment did not effect a change in the name or identity of what had been originally charged.

**{¶12}** Because the amendment did not change the identity of the OVI charge nor change the elements required to prove it, *C.A.* is distinguishable. *See State v. From*, 5th

Dist. Perry No. 10-CA-15, 2011-Ohio-1254, ¶ 19. The first assignment of error is overruled.

{¶13} For her second assignment of error, Crump maintains that the court erred by denying her motion for judgment of acquittal on the failure-to-maintain a lane charge because the city failed to offer evidence to establish that the infraction occurred within the jurisdictional boundaries of the city. She claims that the driving infraction occurred on Cedar Road, whose center line is the boundary between the cities of University Heights and South Euclid. She argues that the infraction occurred while driving on the South Euclid side of Cedar Road, so the University Heights officer had no jurisdiction to make an arrest.

{¶14} A Crim.R. 29(A) motion for judgment of acquittal cannot be granted if, after viewing the evidence most favorably to the state, "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus.

{¶15} A police officer can only arrest and detain persons "found violating, within the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township." R.C. 2935.03(A)(1).

{¶16} There was no evidence at trial to support Crump's assertion that Cedar Road is the boundary line between University Heights and South Euclid. The parties appeared

to assume as fact that the middle of Cedar Road is the boundary line, but they did not stipulate to it nor did Crump offer evidence at trial to support it.[1] The only evidence the jury heard on the location of the infraction was that the arresting officer was in University Heights when he first identified Crump's car. *See* tr. 184. He testified that Crump turned left onto Cedar Road and he followed her, but there was no testimony at all that he was actually in the city of South Euclid as he followed her. The court, ruling on a Crim.R. 29(A) motion for judgment of acquittal, could only view the evidence most favorably to the city as indicating that the arresting officer was in University Heights, this being the only city mentioned by the arresting officer in his testimony. For the court to find otherwise would have required it to assume a fact not in evidence.

{¶17} Even if Crump was correct that the center of Cedar Road constituted the boundary line between University Heights and South Euclid, the standard of review for granting a motion for judgment of acquittal under Crim.R. 29(A) compels the conclusion that the court did not err by refusing to grant the motion. If the center line of Cedar Road formed the boundary between the cities, her act of crossing the center, no matter how de minimis, would mean that she crossed into University Heights at the time of the infraction, vesting the officer with territorial jurisdiction. Crump disputes that she crossed the center line, but video from a dashboard camera on the police cruiser

---

[1] There is case precedent that appears to support Crump's assertion that the middle of Cedar Road is the boundary between the two cities, *see, e.g.*, *Young Israel Org. v. Dworkin*, 105 Ohio App. 89, 133 N.E.2d 174 (8th Dist.1956), but we specifically noted in *Young Israel* that the parties stipulated that fact, along with others. *Id.* No such stipulation appears in the record before us.

documented the infraction. Consistent with the standard for granting motions for judgments of acquittal under Crim.R. 29(A), the court properly denied the motion because reasonable minds viewing the video could differ on whether Crump's vehicle crossed the center line. *Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 at syllabus.

{¶18} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Shaker Heights Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
TIM McCORMACK, J., CONCUR