[Cite as *State v. Hansard*, 2018-Ohio-5181.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-153** |
| NICHOLAS HANSARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 000667.

Judgment: Affirmed.

*Charles Coulson*, Lake County Prosecutor, and *Karen Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Matthew Bangerter*, P.O. Box 148, Mentor, OH 44061 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Nicholas Hansard, appeals from the October 19, 2017 judgment of the Lake County Court of Common Pleas, sentencing him for aggravated robbery with a firearm specification and telecommunications fraud following a bench trial. On appeal, appellant argues the trial court erred in denying his Crim.R. 29(A) motion for acquittal. Finding no reversible error, we affirm.

{¶2} Nick Simons and Chris Sanders placed an ad to sell an X-Box video game console on a website called OfferUp. On January 6, 2017, a potential buyer with an account name of "Brandon Jacobs" made contact with the men expressing interest in the item. The buyer indicated he would meet them and would be driving a black car. Simons and Sanders met the buyer by the front door of Simons' apartment building after dark.

{¶3} The buyer was a light-skinned African American man, possibly bald, wearing black boots, blue pants, a gray hooded sweatshirt, a dark-colored jacket with a subtle camouflage design, and had a black snow mask covering his face below his eyes. Simons and Sanders estimated the buyer's height at six feet five inches, the same height as Simons, and weighing between 275 and 300 pounds. Surveillance video taken from the apartment complex's security cameras confirm the descriptions of the buyer and demonstrate he never removed the mask. The buyer asked to use a phone. Sanders went upstairs to retrieve one for him.

{¶4} After Sanders left, the buyer pulled a gun on Simons. Simons described the firearm as "huge," approximately a foot long and black in color. The buyer pointed the gun at Simons' head and threatened to shoot him if he moved. Simons complied with the buyer's demand. The male then grabbed the X-Box and ran out of the building. Surveillance video shows a male fleeing the building at 7:53 p.m., carrying an X-Box in one hand and holding an apparent gun in the other hand. Simons reported that the male left in a black Chevy Cruze. Simons never saw the male again.

{¶5} On June 16, 2017, appellant was indicted by the Lake County Grand Jury on one count of aggravated robbery, a felony of the first degree, in violation of R.C.

2

2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.145, and one count of telecommunications fraud, a felony of the fifth degree, in violation of R.C. 2913.05. Appellant pleaded not guilty at his arraignment and waived his right to a jury trial.[1]

{¶6} A bench trial was held on August 29, 2017. To support the victim's testimony, the state provided both physical and technological evidence connecting appellant to the offenses described.

{¶7} The trial court subsequently found appellant guilty of aggravated robbery with a firearm specification and telecommunications fraud. On October 19, 2017, the court sentenced appellant to a total prison term of eight years. Appellant filed a timely appeal and raises the following assignment of error:

{¶8} "The trial court erred to the prejudice of the Defendant-Appellant in denying his Motion for Acquittal made pursuant to Crim.R. 29(A)."

{¶9} In his sole assignment of error, appellant argues the trial court erred in denying his Crim.R. 29(A) motion for acquittal which was made at the conclusion of the state's case. Appellant contends the state failed to present sufficient evidence to sustain his convictions for aggravated robbery with a firearm specification and telecommunications fraud.

{¶10} In *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been

---

1. Appellant also pleaded no contest to, and was convicted of, one count of attempted robbery, a felony of the fourth degree, in violation of R.C. 2911.02(A)(3), in Case No. 17 CR 227.

3

proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶11} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4-5 (Dec. 23, 1994):

{¶12} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the [trier of fact], while 'manifest weight' contests the believability of the evidence presented.

{¶13} "'"The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*"'

{¶14} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a [guilty] verdict where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" * * *" (Emphasis sic.) (Citations omitted.)

{¶15} "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a

rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 WL 535675, *3 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991), superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶16} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *Jenks, supra*, paragraph one of the syllabus.

{¶17} Appellant takes issue with the guilty finding for aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.145.

{¶18} R.C. 2911.01, "Aggravated robbery," states:

{¶19} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶20} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

5

{¶21} A "'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

{¶22} R.C. 2941.145 provides the framework for convicting an individual of a firearm specification, stating in part:

{¶23} "(A) Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶24} R.C. 2923.11(B) states:

{¶25} "(1) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

{¶26} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

{¶27} Testimony from witnesses who had the opportunity to observe the weapon and surrounding circumstances can be used to establish operability. *State v. Burkett*,

11th Dist. Portage No. 2009-P-0069, 2010-Ohio-6250, ¶39, quoting *State v. Cook*, 10th Dist. Franklin Nos. 09AP-316 and 09AP-317, 2010-Ohio-2726, ¶60. It is not necessary for the state to admit into evidence the firearm used during the offense. *State v. Bryant*, 11th Dist. Trumbull No. 2015-T-0100, 2016-Ohio-4928, ¶35, quoting *State v. Johns*, 11th Dist. Trumbull No. 2014-T-0036, 2015-Ohio-2455, ¶31.

{¶28} Appellant also takes issue with the guilty finding for telecommunications fraud, a felony of the fifth degree, in violation of R.C. 2913.05.

{¶29} R.C. 2913.05(A) states: "No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud."

{¶30} In this case, Simons, the robbery victim, testified in clear detail about what had transpired. Simons used OfferUp, an app on a mobile device that is used to buy and sell items via the internet, to sell an X-Box for Sanders, who was his mother's boyfriend at the time. Simons corresponded with an interested buyer who identified himself as "Brandon Jacobs" using the app. The screenshots of their correspondence, obtained from Simons' cell phone, confirm his testimony, i.e., that the buyer initiated the contact and the terms of sale were negotiated.

{¶31} The buyer agreed to meet on January 6, 2017 at Simons' apartment complex to purchase the X-Box. Simons and Sanders described the buyer in detail which was confirmed via video surveillance. Simons testified that when Sanders returned to the apartment to retrieve a cell phone for the buyer, the buyer pulled a long,

7

black handgun out of his waistband and pointed it directly at Simons, about an inch from his forehead. The buyer threatened Simons not to move or he would shoot him. The male grabbed the X-Box from Simons and fled the scene holding both the X-Box and the gun.

{¶32} Detective Steve Ondercin testified regarding articles of clothing later found in appellant's vehicle subsequent to an unrelated arrest that matched items seen on the robber during the January 6, 2017 incident. Detective Ondercin explained that a gray hooded sweatshirt was found in appellant's vehicle when he was arrested as well as a dark-colored jacket with a subtle camouflage design.

{¶33} Appellant's cell phone also revealed key evidence. Detective Ondercin indicated he searched an older iPhone found within appellant's possession when he was arrested which contained the OfferUp app. Detective Ondercin informed the court that OfferUp had been downloaded at some point on some device associated with that iTunes account. Appellant's phone also contained multiple photos of himself. In one photo, appellant was seen posing near a similar jacket to the one worn by the robber.

{¶34} OfferUp records reveal four accounts associated with "Brandon Jacobs," the person that Simons thought he was meeting, all created with the same mobile device. Detective Ondercin testified that OfferUp's records only indicate the IP address associated with an account when it was created, not where the account was used subsequently. An email address listed on appellant's business card, which was inside his wallet when he was arrested, is strikingly similar to the email address provided for one of these accounts, daveguru480@gmail.com and daveguru570@gmail.com. Also, three of the four OfferUp accounts were associated with the same AT&T U-Verse IP

address. This address was registered to Lori Harris living on Sperry Road in Chesterland, Ohio. Appellant offered this Sperry Road address as his residence and his vehicle and driver's license are also associated with that address.

{¶35} The OfferUp records show a consistent pattern of communication among the accounts in which the buyer/account owner inquires about the availability of higher-end items, including electronics. In each message, including the message in the instant case, the prospective buyer specifically asks the seller if the item is available "for sell," instead of the grammatically correct phrase, "for sale." Screenshots of the messages on Simons' cell phone confirm this language.

{¶36} The state also presented Verizon records for the phone number belonging to appellant. This number was displayed on appellant's business card and was provided by appellant himself during his interview. Verizon records clearly placed appellant's phone number in the vicinity where the robbery at issue occurred.

{¶37} As addressed, the totality of circumstances show that appellant had an operable firearm under his control and brandished said firearm as he committed the robbery offense. As a whole, the evidence sufficiently proves that the state demonstrated, beyond a reasonable doubt, that the firearm used in the robbery was operable or could have been operable at the moment of the offense. In addition, Simons' testimony reveals the firearm was intended to be used as a deadly weapon.

{¶38} Pursuant to *Schlee, supra*, there is sufficient evidence upon which the trier of fact could reasonably conclude beyond a reasonable doubt that the elements of aggravated robbery with a firearm specification and telecommunications fraud were proven. Thus, the trial court did not err in overruling appellant's Crim.R. 29 motion.

9

{¶39} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.