[Cite as *State v. Hastings*, 2021-Ohio-662.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-P-0014** |
| CHRISTOPHER M. HASTINGS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2019 CR 00507 C.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Theresa M. Scahill,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Seneca Konturas,* P.O. Box 662, Aurora, OH 44202 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Christopher M. Hastings, appeals the December 23, 2019 and January 29, 2020 Judgment Entries of the Portage County Court of Common Pleas journalizing the jury's guilty finding and sentencing him to concurrent eight-year and three-year prison terms. For the reasons set forth herein, the judgments are affirmed.

{¶2} On the evening of May 20, 2019, Mr. Hastings and Ms. Hayes were released from Portage County Jail and dropped off in downtown Ravenna. They had not met each other previously and neither had any money or warm enough clothing for the

weather. As they were heading the same direction, they walked together. Mr. Hastings approached multiple people to ask for a ride, though none obliged. He also approached Deputy Hoffman, explained they had just been released from jail and asked for a ride. The officer declined, stating it was against policy.

{¶3} Mr. Hastings and Ms. Hayes continued walking west until they reached the Midway drive-in theater, where L.K., his son, and a friend were unloading a golf cart from a trailer by the entrance to the theater. L.K.'s wife, D.K., was sitting in the backseat of their Ford Flex van, which was parked nearby. Leaving Ms. Hayes on the opposite side of the road, Mr. Hastings crossed the street and approached them. He repeatedly asked L.K.'s son for a ride but was declined. Mr. Hastings then got into the Ford Flex, found the keys in the vehicle, looked back, and in his own words, "saw grandma back there." There was some testimony that he ordered D.K. out of the car before he drove off, but that she, as an elderly woman, moved too slowly. L.K.'s son unsuccessfully attempted to stop the car by pounding on the driver's window with his cane. Mr. Hastings drove off with D.K. in the backseat.

{¶4} Mr. Hastings crossed the street to Ms. Hayes, ordered D.K. out of the car and Ms. Hayes into the car. D.K. testified that the childproof locks were engaged, and she could not exit the vehicle at that time. Mr. Hastings then drove the vehicle, by Ms. Hayes' and D.K.'s testimony, very fast and erratically for a mile or two, eventually pulling over at a maintenance shed on Powdermill Road. He ordered D.K. out of the car and took her purse from her. Ms. Hayes testified that she was unaware of D.K.'s presence in the vehicle, which had tinted windows, until they dropped her off on Powdermill Road.

2

{¶5} L.K. and his son called the police. Deputy Hoffman, whom Mr. Hastings had stopped and asked for a ride earlier, responded and immediately suspected Mr. Hastings and Ms. Hayes. The Portage County Jail confirmed the description of the suspects given by L.K. and his son matched what Mr. Hastings and Ms. Hayes were wearing when they were released from jail earlier that day. D.K. was found cold but uninjured several hours later once she was able to flag down a driver in a passing car, who called the police for her.

{¶6} Mr. Hastings and Ms. Hayes continued to Akron, where they used the several hundred dollars taken from D.K.'s purse to buy drugs and rent a hotel room. They parted ways the next morning. Later that day when Ms. Hayes realized there was a warrant out for her arrest, she turned herself in. Mr. Hastings was arrested four days later. They were both charged, the cases were severed, and Ms. Hayes agreed to testify against Mr. Hastings.

{¶7} Mr. Hastings was indicted on two counts: Count One, Kidnapping, a felony of the first degree, in violation of R.C. 2905.01; and Count Two, Theft from a Person in a Protected Class, a felony of the third degree, in violation of R.C. 2913.02. Following a trial, the jury found him guilty of both counts, and further finding that the victim was not released in a safe place unharmed, that the theft victim was an elderly person, and that the value of the property stolen was between $7,500 and $37,500. The court sentenced him to eight years in prison on Count One, and three years in prison on Count Two, to be run concurrently. As kidnapping is a qualifying offense, Mr. Hastings was informed he could receive an additional 50 percent of the minimum sentence for behavior deemed inappropriate by the Ohio Department of Rehabilitation and Correction, as well as the

3

mandatory five-year period of post-release control and the violent offender reporting requirements.

{¶8} Mr. Hastings now appeals, assigning three errors for our review. The first states:

{¶9} The trial court erred in denying defense counsel's Motion in Limine, and subsequent renewal of the same at trial, when it allowed the state to reference Hastings' recent released from jail on unrelated charges where the prejudice to the defendant created by the state's statements substantially outweighed the probative value thereof contrary to Evid.R. 403 and 404(B).

{¶10} Mr. Hastings' Motion in Limine argued that any references to his recent release from jail should be excluded under the rule against prior bad acts set forth in Evid.R. 404(B) and that the prejudice outweighed the probative value, as set forth in Evid.R. 403. The state counterargued that the reference to his recent release from jail provided context to how Mr. Hastings and Ms. Hayes, who did not know each other prior to that day, came to be walking together toward Kent, and it further explained how law enforcement came to determine Mr. Hastings' identity. The trial court found that the prejudice did not outweigh the probative value and that the state could prove identity through any means within the rules of evidence. On appeal, Mr. Hastings argues the trial court erred in denying the Motion in Limine as the state had less prejudicial means of proving identity, namely a redacted form of his post-Miranda recorded confession.

{¶11} Appellate review of a trial court's determination regarding the admissibility of evidence is reviewed under an abuse of discretion standard. *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus. The phrase "abuse of discretion" is one of art, connoting judgment which does not comport with reason or the record. *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v.*

4

*Ferranto*, 112 Ohio St. 667, 676-678 (1925). It is the "trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black Law's Dictionary* (8 Ed.Rev.2004) 11.

{¶12} Initially, we note that though Mr. Hastings objected to the presentation of his unredacted post-Miranda police interview recording, in which he states he was just released from jail, he did not object when Ms. Hayes testified that the two of them first met on the bus as they were released from jail, or to the officer's testimony that Mr. Hastings approached him, stating he had just been released from jail and needed a ride. Because he failed to object to that testimony, any error in the admission of the recorded statement that he was just released from jail would be reviewable only for plain error, as the jury was informed of this fact by other unobjected to testimony. *See generally State v. Underwood*, 3 Ohio St.3d 12, 13 (1983); *see also State v. Butcher*, 170 Ohio App.3d 52, 2007-Ohio-118, ¶54 (11th Dist.). ("The granting of a motion in limine alone will not preserve error for review. Instead, a proper objection must also be made at trial at the time the allegedly inadmissible evidence is introduced.")

{¶13} Regardless, Mr. Hastings' argument fails on the merits.

{¶14} Evid.R. 404(B) states, in pertinent part:

{¶15} Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶16} Evid.R. 403(A) states:

{¶17} Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

5

{¶18} Mr. Hastings' argument on appeal ignores the probative contextual value of the fact of their release from jail. Without that fact, the story would be incomplete; the jury would be left to wonder how two strangers came to be walking from Ravenna to Akron, and why they were so desperate for a ride. Moreover, it provided the reason law enforcement was able to identify the suspects so quickly. No evidence or testimony revealed the reason Mr. Hastings was previously in jail. The introduction of that evidence lent context to Mr. Hastings and Ms. Hayes' meeting and need for a ride and explained how the officer was able to identify the suspects. The jury was instructed that the fact that Mr. Hastings was in jail previously could not be considered for any purpose. Absent evidence to the contrary, the jury is presumed to have followed instructions. *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001). Accordingly, we find the trial court did not err in finding the probative value outweighed the prejudicial value, and in admitting the unredacted recording.

{¶19} Mr. Hastings' first assignment of error is without merit.

{¶20} Mr. Hastings combines his second and third assigned errors, and we do likewise. They state:

{¶21} [2.] The trial court erred in failing to grant defendant's motions for acquittal under Crim.R. 29, and for entering judgment on the verdict where it was not supported by sufficient evidence.

{¶22} [3.] The trial court erred in entering judgment on the verdict against the manifest weight of the evidence.

{¶23} In *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Supreme Court of Ohio stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that

6

reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Bridgeman, supra,* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶24} "Sufficiency" challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4 (Dec. 23, 1994). The test for sufficiency is "'"whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt."'" (Citations omitted.) *Id.* at *4. "[T]he verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact." *State v. Hansard*, 11th Dist. Lake No. 2017-L-153, 2018-Ohio-5181, ¶15, citing *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶25} In determining whether the verdict was against the manifest weight of the evidence, on the other hand, "'the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Long*, 11th Dist. Lake No. 2013-L-102, 2014-Ohio-4416, ¶51, quoting *Schlee, supra,* at *4-5.

7

{¶26} Mr. Hastings specifically challenges three aspects of his convictions: first, that he should have been convicted of the lesser-included offense of abduction, not kidnapping; alternatively, if the conviction for kidnapping stands, he challenges the jury's finding that the victim was not released in a safe place, unharmed; and finally, he challenges whether the state presented sufficient evidence as to the value of the Ford Flex. We address each in turn.

{¶27} First, kidnapping is defined in R.C. 2905.01 which states, in pertinent part:

{¶28} (A) No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

{¶29} * * *

{¶30} (2) To facilitate the commission of any felony or flight thereafter.

{¶31} Mr. Hastings argues the difference between kidnapping and abduction is that the former is committed purposely, while the latter is committed knowingly. In support, he cites *State v. Heller,* 10th Dist. Franklin No. 01AP-648, 2002-Ohio-879. Although not specifically comparing kidnapping to abduction, this court has reached a similar conclusion, noting that R.C. 2905.01(A) "includes an abduction or restraint of another for any one of the specified purposes, and it is the offender's purpose which determines kidnapping under this section." *State v. Cisternino*, 11th Dist. Lake No. 99-L-137, 2001 WL 314798, *13, citing Staff Notes to R.C. 2905.01.

{¶32} Purposely was defined for the jury as:

{¶33} To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to him unless he expresses it to others or indicates it by his conduct.

{¶34} A person acts purposely when it is his specific intention to cause a certain result.

8

{¶35} It must be established in this case that at the time in question there was present in the mind of the Defendant to remove [D.K.] from the place where she was found or restrain her liberty for the purpose of facilitating the commission of a felony or flight thereafter.

{¶36} The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means used, and all other facts and circumstances in evidence.

{¶37} Knowingly was defined for the jury as:

{¶38} A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result, or his conduct will probably be of a certain nature. A person has knowledge of circumstance when he is aware that such circumstances probably exist.

{¶39} The court also instructed the jury that, "[t]he offense of Abduction is distinguished from Kidnapping by the absence of or failure to prove that [D.K.] was removed or restrained for the purpose of facilitating the commission of a felony or flight thereafter."

{¶40} By his own account, Mr. Hastings knew D.K. was in the car when he drove the vehicle away. It was not merely probable that D.K. would be transported elsewhere; it was certain. And he did so in a successful attempt to take the vehicle, a felony, and get away. Mr. Hastings made the conscious decision to drive D.K. two miles away from where she was found against her will. The transportation was certain to occur when he drove away with her in the backseat. He decided to take her with him, instead of stopping and waiting for her to get out, and risking getting caught. Thus, we cannot say the jury erred by finding Mr. Hastings acted purposely, and not merely knowingly. We find the state presented sufficient evidence and that the jury did not lose its way by finding Mr. Hastings guilty of kidnapping.

9

{¶41} Alternatively, Mr. Hastings argues, that if the offense was kidnapping, it should have been a felony of the second degree. Though kidnapping is generally a felony of the first degree, R.C. 2905.01(C)(1) states that "if an offender * * * releases the victim in a safe place unharmed, kidnapping is a felony of the second degree." *Id.*

{¶42} He argues that D.K. was left safely on the side of the road and that "it is difficult to understand how the jury reached their decision that she was not." We disagree. The evidence showed that it was a cold night. D.K. was left on the side of the road after dark outside a maintenance shed with a dim light on the outside. She was not able to get inside the shed but sat outside. Mr. Hastings relieved her of her purse, which contained her phone. Though there were houses about a mile up the road, D.K. testified that her bad knee and her fear of getting hit by a car kept her from walking somewhere to get help. In support of finding the location unsafe, one of the officers testified that though he would feel safe if left outside that shed, it would not be safe for an elderly woman.

{¶43} Though she was physically unharmed, given D.K.'s age of 72, the temperature, the remote area in which she was left, and the time of night which hindered her ability to walk safely to find help, we find the state presented sufficient evidence that D.K. was not left in a safe place, unharmed, and that the jury did not lose its way in so finding.

{¶44} Finally, Mr. Hastings argues the state failed to present sufficient evidence of the value of the vehicle stolen.

{¶45} R.C. 2913.02 defines theft, in pertinent part, as:

{¶46} (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

10

{¶47} (1) Without the consent of the owner or person authorized to give consent;

{¶48} * * *

{¶49} (B)(1) Whoever violates this section is guilty of theft.

{¶50} * * *

{¶51} (3) * * * if the victim of the offense is an elderly person, * * * a violation of this section is theft from a person in a protected class, and division (B)(3) of this section applies. * * * If the value of the property or services stolen is seven thousand five hundred dollars or more and is less than thirty-seven thousand five hundred dollars, theft from a person in a protected class is a felony of the third degree.

{¶52} Mr. Hastings was charged with a third-degree felony based on the value of the vehicle purported to be greater than $7,500 and less than $37,500. The only evidence offered to establish the value of the vehicle was L.K.'s testimony.

{¶53} "To establish value in theft offenses, the state need not prove value to an exact amount. Rather, all that is required is that some evidence be admitted to establish value." *State v. Pesec*, 11th Dist. Portage No. 2006-P-0084, 2007-Ohio-3846, ¶59, citing *In re Lame*, 11th Dist. Portage Nos. 96-P-0265, 96-P-0266, and 96-P-0267, 1998 WL 683940, and R.C. 2913.61(C). Moreover, "[a]n owner of personal property is qualified to give an opinion as to the value of personal property." *Pesec, supra,* at ¶40, citing *State v. Clements,* 8th Dist. Cuyahoga No. 36914, 1978 WL 217769, *5, citing *Bishop v. East Ohio Gas*, 143 Ohio St. 541 (1944).

{¶54} L.K. testified that he and his wife bought the vehicle in 2014 for $27,000. He was not sure exactly how much it had depreciated in the five years since he purchased it, but he hoped "it hadn't gone down a lot." He also testified that it was currently worth "at least double" or triple $7,500, at one point estimating its value at the time of the theft

11

to be "around $20,000." We find this to be sufficient evidence and that the jury did not lose its way in determining the value of the Ford Flex to be between $7,500 and $37,500.

{¶55} Thus, Mr. Hastings' second and third assignments of error are without merit.

{¶56} Accordingly, the judgments of the Portage County Court of Common Pleas are affirmed.


MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.