[Cite as *State v. Zemljic*, 2021-Ohio-2181.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>　　　　Plaintiff-Appellee,<br><br>　　- v -<br><br>ERIK RYAN ZEMLJIC,<br><br>　　　　Defendant-Appellant. | CASE NO. 2020-P-0073<br><br>Criminal Appeal from the<br>Municipal Court,<br>Ravenna Division<br><br>Trial Court No. 2019 TRC 13836 R |

## **O P I N I O N**

Decided: June 28, 2021
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Michael A. Scala*, 244 Seneca Avenue, N.E., P.O. Box 4306, Warren, OH 44482 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Erik R. Zemljic, appeals from his convictions for Operating a Vehicle while Under the Influence and Refusal to Submit to Chemical Tests in the Portage County Municipal Court, Ravenna Division. For the following reasons, we affirm the judgment of the lower court.

{¶2} On September 29, 2019, Zemljic was issued a citation for Operating a Vehicle while Under the Influence, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a); Refusal to Submit to Chemical Tests, a misdemeanor of the first

degree, in violation of R.C. 4511.19(A)(2); and a marked lanes violation, a minor misdemeanor, in violation of R.C. 4511.33.

{¶3} A bench trial was held on July 21, 2020. At its commencement, defense counsel moved for a continuance, noting that in May 2020, counsel had requested videos of the dash camera and body camera operating during the stop of Zemljic and again requested the videos on May 28, 2020, because the videos provided would not play. Defense counsel stated that, as of the morning of trial, "the State has been unable to provide us a video of the body armor that works," and argued that such video was necessary because the dash camera video, which was accessible, did not have sound. Defense counsel stated that he had unsuccessfully tried to open the body camera video on the State's computer and the prosecutor confirmed that although he tried the videos "on several machines," there was no sound on the dash camera video and the body camera video would not open. The court stated: "Here's my dilemma. One, this case is from last August. Mr. Zemljic was granted multiple opportunities to apply for the Public Defender. The Public Defender was appointed in March. We're now at the end of July, and we're just now bringing discovery issues to the Court's attention, which is problematic for me so I'm going to overrule the motion to continue. We're going to proceed." It further noted the matter had previously been set for trial at which Zemljic failed to appear and there had been five pretrials at which this issue was not raised.

{¶4} The following pertinent testimony and evidence were presented at trial.

{¶5} On September 29, 2019, at around 11:24 p.m., Officer John Milner, a Patrolman with the Streetsboro Police Department, observed Zemljic operating his vehicle on State Route 14 in Streetsboro and "drifting over the lanes." From his

2

experience, this driving was consistent with someone who may be under the influence of alcohol or drugs. Milner conducted a stop of Zemljic's vehicle and observed that he was visibly shaking and his eyes "were kind of sunken in and droopy" with a "strung-out type of look." Milner had Zemljic complete standard field sobriety tests, which Milner testified showed signs of driving under the influence as Zemljic had a "poor performance." On the horizontal gaze nystagmus test, Milner observed six clues of driving under the influence, including a lack of smooth pursuit and jerking of the eyes. On the walk and turn test, Zemljic had difficulty maintaining his balance, performed an incorrect turn, and needed to be given the instructions multiple times. During the one leg stand, Zemljic had to raise his hands, swayed to keep his balance, and put his foot down. Advanced Roadside Impaired Driving Enforcement (ARIDE) tests were also conducted, including a lack of convergence eye test and a test requiring Zemljic to estimate when 30 seconds had passed, both of which Milner testified further demonstrated impairment. Milner concluded that Zemljic was under the influence of drugs. After Zemljic, who had a prior OVI conviction in 2003, was arrested, Milner requested he complete a urine test, which Zemljic refused. On cross-examination, Milner was asked whether the fact that Zemljic's car blinkers were on would have impacted the tests and responded that he could not "say for sure" but "imagined it probably wouldn't."

{¶6} Defendant, Erik Zemljic, testified that he had a flea infestation in his home about a week or two prior to the September 29 stop. He applied chemicals, including flea bombs and some "commercial" products, to treat his home on Friday, September 27, and on September 29, about half an hour to an hour before the time he was pulled over. He testified that he also applied chemicals to his bed and then slept in it. He injured his head

3

on September 27 when he passed out and fell and subsequently experienced amnesia but did not seek treatment at the hospital. He believed he should not have exposed himself to these chemicals and did not follow any safety precautions. Documents with the manufacturers' instructions for using the chemicals, which included an insecticide, a "fogger" or "flea bomb," and a "premise spray," were presented by the defense. The documents provided warnings to ventilate the area where the chemicals were used and to "avoid breathing spray mist." They also included instructions that a person who inhales the chemicals should be "removed * * * to fresh air" and to call poison control if chemicals were inhaled. Additional instructions warned that "intoxication to solvents may cause dizziness, headache, nausea, narcosis, eye irritation, G.I. tract irritation, and cardiac arrhythmia in certain cases."

{¶7} According to Zemljic, on September 29, he booked a hotel in Streetsboro due to the condition of his home. A receipt for a booking of that hotel on Expedia was presented. After setting off a flea bomb, he left and made the ten to twenty minute drive from Kent to the hotel, then drove to get food, when he was pulled over. Zemljic denied taking any illegal drugs on the night of the stop, further testifying that he had been taking several prescription medications in the summer of 2019 including Klonopin, Clonazepam, Adderall, and Sertraline but had stopped taking them which he believed affected his behavior and mannerisms.

{¶8} Frank Zemljic, Zemljic's father, testified that when he had visited his son's house on September 29, 2019, there were chemicals "thrown around for the fleas," and it looked like a snowstorm had occurred in the house. He left shortly thereafter because

4

the smell was "extremely powerful." He testified that Zemljic seemed groggy, "wasn't himself," and had a bump on his head.

{¶9} The court found Zemljic guilty of all three offenses. For the purposes of sentencing, the court found that "Counts 1 and 3 merge into Count 2, OVI Refusal to Submit to Chemical Testing." It sentenced him to a term of 180 days in jail with 177 suspended and three days in the driver intervention program, as well as a $600 fine. The court stayed his sentence pending appeal.

{¶10} Zemljic timely appeals and raises the following assignments of error:

{¶11} "[1.] The trial court erred, to the detriment of appellant, by allowing the video to be presented into evidence in spite of the lack of audio portion, and not granting a continuance for the parties to correct this defect.

{¶12} "[2.] The trial court erred, to the detriment of appellant, by making a finding of guilty despite the manifest weight of the evidence being insufficient."

{¶13} In his first assignment of error, Zemljic argues that the trial court erred by failing to grant a continuance to ensure the audio portion of the stop could be presented at trial and the court erred by admitting the video of the stop when it lacked the audio component.

{¶14} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). "An abuse of discretion connotes the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'"" *State v. Moore*, 11th Dist. Geauga No. 2014-G-3195, 2014-Ohio-5183, ¶ 54, quoting *State v. Beechler*,

5

2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶15} "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Citation omitted.) *Unger* at 67. Several factors that can be considered are: "the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." *State v. Landrum*, 53 Ohio St.3d 107, 115, 559 N.E.2d 710 (1990). "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger* at 67.

{¶16} It is evident that the lower court took into account the circumstances surrounding the request for the continuance and we do not find that it abused its discretion in denying it. The court recognized that the matter had been pending for approximately ten months, had been delayed previously due to Zemljic's failure to appear, and that the court had not been made aware of the issues with the video, although defense counsel had known of the problem for over two months. Denials of continuances have frequently been upheld where a defendant claims certain evidence is necessary to proceed with trial but fails to move for a continuance until the day of trial. *State v. Harmon*, 2d Dist. Clark No. 09CA0035, 2010-Ohio-836, ¶ 8-18 (where defendant needed additional time to obtain a videotape alleged to be in the possession of the sheriff's department although the State denied a video existed, defendant had been granted a prior continuance, and motion was

6

not made until the day of trial, it was not an abuse of discretion to deny the motion for continuance); *State v. Haynes*, 12th Dist. Brown No. CA2009-07-025, 2010-Ohio-2960, ¶ 4-9 (motion properly denied when defendant failed to seek a continuance to locate a witness until the day of trial). All of the foregoing facts weigh against granting the continuance.

{¶17} Further, any potential prejudice to Zemljic does not appear to be significant such that it would outweigh other considerations. It is unclear whether the concerns with the videos could have been remedied even if a continuance had been granted because the State appeared unable to access or provide the videos requested. Further, the court, acting as the trier of fact, was fully aware of the claims as to what may have been said in the audio by Zemljic regarding his physical condition and reasons for it. When weighing the potential prejudice against the concerns of efficient administration of justice, the court was within its discretion to deny the continuance.

{¶18} Zemljic also argues that the dash camera video should not have been admitted as evidence since it lacked audio.

{¶19} "Appellate review of a trial court's determination regarding the admissibility of evidence is reviewed under an abuse of discretion standard." *State v. Hastings*, 11th Dist. Portage No. 2020-P-0014, 2021-Ohio-662, ¶ 11.

{¶20} Zemljic cites to no authority for the proposition that the video was inadmissible simply because it lacked audio. There is nothing in the record to demonstrate that it was not properly authenticated or was not relevant such that it was inadmissible under the Rules of Evidence. In the absence of any authority to support a contrary argument, we find no abuse of discretion.

7

{¶21} Finally, to the extent that Zemljic comments on whether police officers rely too heavily on video evidence rather than their memories of incidents giving rise to charges, we find no legal argument warranting reversal in this line of analysis. A recording, either in whole or in part, with audio or video, is certainly admissible regardless of whether it may, in Zemljic's opinion, make "observations more casual as Officers know that there would be a video that could be played in the future." The court in this case was capable, when acting as the trier of fact, to weigh all of the evidence together in reaching its verdict. Further, to the extent that Zemljic takes exception to Officer Milner's inability to recall whether he actually gave a certain instruction to Zemljic or simply "always gave" such instructions, this relates to the credibility of his testimony rather than the admissibility of the video evidence.

{¶22} The first assignment of error is without merit.

{¶23} In the second assignment of error, Zemljic argues that the court erred in finding him guilty "despite the manifest weight of the evidence being insufficient."

{¶24} Sufficiency is a test of the adequacy of the evidence to determine "whether the evidence is legally sufficient to support the * * * verdict as a matter of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," i.e., "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d

8

492 (1991), paragraph two of the syllabus.

{¶25} In contrast, "weight of the evidence addresses the evidence's effect of inducing belief" and warrants consideration of "whose evidence is more persuasive -- the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶26} Zemljic argues that the State failed to demonstrate that he was under the influence of drugs or alcohol while driving, emphasizing his testimony that he had a head injury, had been exposed to chemicals to treat fleas and the lack of evidence to corroborate Officer Milner's conclusion that he was impaired by drugs.

{¶27} Pursuant to R.C. 4511.19(A)(1)(a), "[n]o person shall operate any vehicle* * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." "'Drug of abuse' means any controlled substance as defined in section 3719.01 of the Revised Code, any harmful intoxicant as defined in section 2925.01 of the Revised Code, and any dangerous drug as defined in section 4729.01 of the Revised Code." R.C. 3719.011(A).

{¶28} Zemljic contends that the State failed to prove he was under the influence of a drug of abuse. Officer Milner testified extensively as to the circumstances which led him to determine that Zemljic was driving while under the influence of drugs. When he

Case No. 2020-P-0073

stopped Zemljic, Milner observed him visibly shaking with his eyes "sunken in and droopy" with a "strung-out type of look." Based on his observations of Zemljic and his driving, Milner was concerned that he was "under the influence of something." Milner confirmed these suspicions by conducting field sobriety tests, which demonstrated a substantial number of cues for driving under the influence. Significantly, Milner performed a test requiring Zemljic to estimate time, under which he counted more slowly than the average person, which is consistent with being under the influence of central nervous system depressants. Milner's testimony demonstrated that he considered all of the circumstances, including Zemljic's behavior, driving, appearance, and actions during the tests, in ultimately concluding, based on his experience and training, that Zemljic was under the influence of drugs.

{¶29} While Zemljic emphasizes the testimony showing "he may have exposed himself to toxic chemicals," as tending to demonstrate that he was not driving under the influence of a drug of abuse, we find this evidence provides further corroboration of Milner's testimony in support of a conviction. Under Zemljic's own version of events, he exposed himself to chemicals used for flea treatments which he knew impacted him negatively, having previously passed out and hit his head after being in the home with these chemicals. Documents showing the ingredients and instructions for the chemicals entered into evidence demonstrated that they can be harmful and have side effects when inhaled and not used in a properly ventilated area. Zemljic's father corroborated the effects of those chemicals and that they were present in Zemljic's home the day of the OVI. Zemljic decided it was necessary to leave his home and rent a hotel room due to the impact of these chemicals. Thus, he was aware of the effects that the chemicals had

10

on him yet still chose to drive knowing he had been exposed to them. Even if Zemljic did not intend to drive while under the influence, a violation of R.C. 4511.19(A)(1) is a strict liability offense and mens rea is irrelevant. *State v. Rendina*, 11th Dist. Lake No. 98-L-129, 1999 WL 1313650, *4 (Dec. 23, 1999); *State v. Moine*, 72 Ohio App.3d 584, 587, 595 N.E.2d 524 (9th Dist.1991). This evidence further supports Milner's testimony that Zemljic was driving while under the influence of drugs. While no specific arguments have been presented as to whether such chemicals are a drug of abuse, a "drug of abuse" includes "harmful intoxicants," defined as "[a]ny compound, mixture, preparation, or substance the gas, fumes, or vapor of which when inhaled can induce intoxication, excitement, giddiness, irrational behavior, depression, stupefaction, paralysis, unconsciousness, asphyxiation, or other harmful physiological effects, and includes, but is not limited to" various substances such as volatile organic solvents, aerosol propellants, and fluorocarbon refrigerants. R.C. 2925.01(I). The testimony and evidence regarding the chemicals and their impact on Zemljic reasonably support a conclusion that these chemicals, when inhaled, could cause harmful physiological effects, rendering them a drug of abuse.

{¶30} We note that it has been held that the State must prove a "nexus between [the defendant's] impaired condition and a drug of abuse." *Cleveland v. Turner,* 8th Dist. Cuyahoga No. 99183, 2013-Ohio-3145, ¶ 14. Given our examination of the foregoing facts, we find that such a nexus was established. Milner was specific in his testimony that the tests and conduct demonstrated the impairment was caused by a drug, noting specifically the test indicating possible use of a central nervous system depressant, and Zemljic's testimony further weighed in favor of a determination that he had been exposed

11

to drugs that led to his impairment.

{¶31} Finally, to the extent that Zemljic also argues that his behavior could be explained by his head injury or the fact that he was "tired," these explanations were issues for the trier of fact to consider and weigh in light of the totality of the evidence. *See State v. Aikens*, 2016-Ohio-2795, 64 N.E.3d 371, ¶ 43 (11th Dist.) (we "must defer to the factual findings of the trier of fact as to the weight to be given to the evidence and the credibility of the witnesses"). They do not render the conviction against the weight of the evidence or unsupported by sufficient evidence.

{¶32} Given the foregoing, we find that the State presented sufficient evidence to prove that Zemljic was under the influence of a drug of abuse and his conviction for Operating a Vehicle while Under the Influence was supported by the weight of the evidence. As to Refusal to Submit to Chemical Tests, R.C. 4511.19(A)(2) requires the State to prove that the defendant was convicted of an OVI in the past twenty years, operated a vehicle while under the influence of a drug of abuse, and refused to submit to a chemical test. R.C. 4511.19(A)(2)(a) and (b); *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 13. There is no dispute that Zemljic refused to submit to a chemical test and had an OVI conviction in the past twenty years and, since the evidence supported a finding that he operated a vehicle while under the influence of a drug of abuse, the evidence supported this conviction. Zemljic concedes the conviction for the marked lanes violation. Based on the foregoing, each of Zemljic's convictions are affirmed.

{¶33} The second assignment of error is without merit.

{¶34} For the foregoing reasons, the judgment of the Portage County Municipal

12

Case No. 2020-P-0073

Court, Ravenna Division, is affirmed.  Costs to be taxed against the appellant.


MARY JANE TRAPP, P.J.,

THOMAS R. WRIGHT, J.,

concur.

13