[Cite as *State v. Sanyasi*, 2024-Ohio-2042.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 2023 CA 00041 |
| | : | |
| GIRJA SANYASI | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County
Municipal Court, Case No. 22TRC10015

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     May 28, 2024

APPEARANCES:

For Plaintiff-Appellee:

BOBBIE YEAGER
ASSISTANT LAW DIRECTOR
40 West Main St., Suite 404
Newark, OH 43055

For Defendant-Appellant:

APRIL F. CAMPBELL
545 Metro Place South, Suite 100
Dublin, OH 43017

*Delaney, P.J.*

{¶1} Defendant-Appellant Girja Sanyasi appeals his April 13, 2023 conviction and sentence by the Licking County Municipal Court. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On November 24, 2022, Defendant-Appellant Girja Sanyasi was arrested by the Ohio State Highway Patrol and charged with (1) OVI Impaired, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(a); (2) OVI Refusal, a first-degree misdemeanor in violation of R.C. 4511.19(A)(2); (3) Marked Lanes, a minor misdemeanor in violation of R.C. 4511.33; and (4) Distracted Driving, a minor misdemeanor enhancement in violation of R.C. 4511.991. Appellant entered a plea of not guilty to the charges.

{¶3} The matter proceeded to a jury trial on April 13, 2023. The trial court utilized an interpreter to assist with communication because Appellant spoke Nepali. The following evidence was presented at trial.

**Traffic Stop**

{¶4} On November 24, 2022, Trooper Colt Taylor with the Ohio State Highway Patrol was on duty and patrolling the west side of Licking County on Taylor Road in Pataskala and Reynoldsburg. At 10:46 p.m., Trooper Taylor encountered a vehicle travelling southbound on Taylor Road. Trooper Taylor observed the vehicle commit multiple marked lanes violations, including traveling left of center twice and striking the right curb twice. The officer activated his overhead lights and initiated a traffic stop. The vehicle eventually stopped in the middle of the southbound lane.

{¶5} Trooper Taylor approached the vehicle and observed that Appellant was the only occupant of the vehicle. The officer noted that Appellant appeared to have glassy bloodshot eyes, a flushed face, slurred speech, acting very lethargic where his movements were not smooth, and an odor of an alcoholic beverage was emanating from the vehicle. Appellant reached for his wallet twice and dropped it. Trooper Taylor asked Appellant if he had anything to drink and Appellant denied having anything to drink. While Appellant was sitting in the vehicle, Trooper Taylor noticed that Appellant had resting body tremors where his arms and legs were shaking as he was sitting stationary. Based on these indicators of impairment, Trooper Taylor asked Appellant to exit the vehicle.

**Standardized Field Sobriety Tests**

{¶6}  Trooper Taylor asked Appellant to perform standardized field sobriety tests, to which Appellant agreed. It appeared to Trooper Taylor that Appellant spoke Nepali, so Trooper Taylor attempted to use a translator application through his smart watch to assist with communication. The translator application, however, was not available. Trooper Taylor first administered the horizontal gaze nystagmus (HGN) test and found six out of six clues. Relevant to this appeal, the State asked Trooper Taylor the following regarding the HGN test:

Q. Based on your training and your experience is HGN a good indicator of impairment?

A. Yes and I believe it is the best test that we have to offer. To clarify for alcohol that is.

Q. Why is it a good indicator?

A. It has the highest percentage rate. It has the highest percentage rate if you have six of six clues. I'm thinking too hard. I can't recall but it is over eighty percent that the individual is at or over the legal limit for alcohol which is .08.

Q. Can a person fake HGN results?

A. No and to add to that no you can't...You can't just create nystagmus. With some habitual alcoholics which means people who drink all of the time they might have better balance than some people who have just drank for their second or third time but one thing that you will always see with alcohol, a high level of alcohol, you're always going to see that nystagmus.

(T. 109-110). There was no objection to this testimony.

{¶7} On cross-examination, Appellant's counsel explored Trooper Taylor's testimony as to the HGN test:

Q. Okay, and you testified that... that it is a very reliable test?

A. Yes.

Q. And eighty percent of the people test over the limit if you get those clues?

A. Um…the NHTSA Manual States that if you get four of the six clues and once again it is either eighty three or eighty six percent of people who are at or over the legal limit. I can't remember the exact number that is why I said over eighty to be truthful but it is either eighty three or eighty six I am not for sure off the top of my head.

Q. And again that statistic is based on accurate performance, accurate instructions, and accurate results?

A. Well I would add that my response to that would be in real world scenarios with people who are under the influence you are not going to get a perfect test period they are not going to be a hundred percent cooperative. It doesn't happen.

Q. Okay, so that would mean that either thirteen or seventeen percent of people where you find those clues ultimately do not test over the limit?

A. When the four of six clues are observed.

Q. Okay.

A. So it is not comparable to this because this once again was six of six clues.

Q. And there is no statistic that applies to six out of six?

A. I believe there is but I am not going to respond to that because I can't remember the exact percentage off the top of my head.

(T. 148-149).

{¶8} Trooper Taylor then administered the walk and turn test, finding eight out of eight clues. On the one leg stand test, Trooper Taylor observed three out of four clues. Based on the clues and indicators of impairment, Trooper Taylor placed Appellant under arrest for OVI Impaired. Trooper Taylor provided Appellant with his *Miranda* rights and transported him to the Granville Post of the Ohio State Highway Patrol.

**Breath Test**

{¶9} At the Granville Post, Trooper Taylor asked if Appellant would submit to a breath test, to which Appellant agreed. A video was shown to the jury as to Trooper Taylor administration of the breath test to Appellant. Trooper Taylor instructed Appellant on how

to complete the breath test. He explained to the jury the instructions he provided to Appellant on the proper method to take a breath test. Appellant attempted three times to submit a sample, but Appellant was unable to provide a sample. Trooper Taylor marked "refusal" on the BMV 2255 form. The form only provides options for "refused" or "submitted," there is no option for "unable to complete." Based on Appellant's prior OVI conviction in 2015, Trooper Taylor charged Appellant with OVI Refusal.

{¶10} Trooper Taylor testified on direct examination as to why he marked the form as a refusal when Appellant attempted to take the breath test three times:

A. If you can't give the machine a valid sample then I obviously cannot accept that as a breath test and so it has to be marked as a refusal. Not to mention I gave him three opportunities to follow my instructions. There is not a whole lot of instructions here it is pretty self-explanatory seal your lips around the end of the mouthpiece and blow into the machine. It is clear at the end once he did finally seal his lips around the end of the mouthpiece he was holding his air he wasn't blowing into the machine. If he would have been blowing into the machine the tone on the machine would have stayed steady it wouldn't have stopped. Every time that tone stops that means there is no air getting to the machine. So subsequently since he failed to cooperate this was marked as a refusal.

Q. And is that what is…is that what it says in the NHTSA Manual to do?

A. Yes and for the record I don't have to give three attempts. I only technically have to give one attempt.

(T. 130-131). On cross-examination, Trooper Taylor testified as to the breath test:

Q. Mr. Sanyasi never said I refuse?

A. He stated that he cannot…that he cannot I believe he said he cannot do the test or something along them lines.

Q. Okay after trying multiple times?

A. I would argue that he tried but attempted multiple times, yes.

Q. Okay, I mean you have certainly ran in to people before that have not been able to submit a breath test?

A. I have run into people who intentionally do not cooperate and make excuses on taking the breath test.

Q. But you can't possibly know that Mr. Sanyasi was intentionally not cooperating?

A. I don't know that for sure, no.

Q. And in fact you tried to get the translation again at the station?

A. I usually use that all of the time to be fair. I mean it just makes things quicker.

Q. Because you have concerns if somebody understands you?

A. I believe he understood me but it just makes things easier and quicker.

(T. 154-155).

### Closing Arguments

{¶11} The State rested its case and Appellant also rested. The trial court asked Appellant to make his Crim.R. 29 motion until after the jury had begun its deliberations.

{¶12} During the State's closing argument, it referred to Appellant's prior OVI conviction in 2015:

Additionally, Mr. Sanyasi has a prior OVI conviction from 2015 and you will have those records to review as well and while Mr. Sanyasi may have attempted to take a breath test, he ultimately failed to do that and therefore had to be marked as refusing to take a breath test.

* * *

When offered the opportunity to take a chemical test that would show, in fact, that he was not impaired he did say that he would try. But after multiple attempts he just said that he can't do it. That is a refusal period now you may not three, you might think hey he did attempt it, but the option is did he give a breath sample or did he not? If he did not then that is a refusal. We also heard Mr. Sanyasi on the video say things like I have never done that before, but if you recall he has a prior conviction from 2015.

* * *

Why would Mr. Sanyasi refuse the one test if he had not consumed any alcohol like he claimed. Well Mr. Sanyasi knew he had a prior OVI in 2015. At the post you hear him say you are trying to get OVI on me.

* * *

You saw that he ultimately did not do the one test that would prove he was not over the limit. It is the one test that would show that he was not impaired or had consumed zero alcohol like he said and he has a prior OVI conviction so he has been through some of this at some point in 2015.

(T. 161, 163, 164, 166). Counsel for Appellant did not object to the State's closing argument.

{¶13} After the trial court charged the jury, Appellant moved the trial court for a dismissal pursuant to Crim.R. 29. The trial court denied the motion.

**Verdict and Sentencing**

{¶14} The jury returned guilty verdicts on the charges of OVI Impaired, in violation of R.C. 4511.19(A)(1)(a), and OVI Refusal, in violation of R.C. 4511.19(A)(2). The trial court found Appellant guilty on the Marked Lanes violation and the Distracted Driving enhancement.

{¶15} Based on allied offenses, the State elected to have Appellant sentenced under R.C. 4511.19(A)(2). The trial court imposed a 180-day jail term with 160 days suspended. Appellant was ordered to pay a $525.00 fine and court costs, and a two-year license suspension from November 24, 2022. The trial court ordered Appellant to pay a $25.00 fine on the Marked Lanes violation and a $100.00 fine on the Distracted Driving enhancement.

{¶16} The trial court's sentence was journalized on April 13, 2023. It is from this judgment entry of conviction and sentence that Appellant now appeals.

**ASSIGNMENTS OF ERROR**

{¶17} Appellant raises five Assignments of Error:

I. THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING TESTIMONY ABOUT THE STATISTICAL PROBABILITY THAT SANYASI WOULD HAVE TESTED OVER THE LEGAL LIMIT THROUGH THE OFFICER, WHO WAS NOT AN EXPERT.

II. SANYASI WAS DENIED HIS RIGHT TO DUE PROCESS THROUGH THE PROSECUTOR'S IMPROPER REMARKS ABOUT HIS PRIOR CONVICTION IN CLOSING.

III. SANYASI'S CONVICTION SHOULD BE REVERSED BECAUSE HIS TRIAL COUNSEL WAS INEFFECTIVE IN A MANNER THAT PREJUDICED HIM.

IV. THE EVIDENCE THE [SIC] SANYASI REFUSED TO SUBMIT TO A BREATH TEST SUFFICIENT TO CONVICT SANYASI UNDER R.C. 4511.19(A)(2) WAS LEGALLY INSUFFICIENT.

V. THE EVIDENCE ALSO WEIGHED MANIFESTLY AGAINST CONVICTING SANYASI OF REFUSING TO SUBMIT TO A BREATH TEST UNDER R.C. 4511.19(A)(2).

## ANALYSIS

### I. and III.

<u>Testimony Regarding HGN Test and BAC Levels</u>

{¶18} In his first Assignment of Error, Appellant argues the trial court committed plain error when it permitted Trooper Taylor's testimony regarding the correlation between HGN results and the statistical probability of a BAC test over the legal limit. Trial counsel did not object during Trooper Taylor's testimony on this issue. For the purpose of our review, because trial counsel failed to object and bring the alleged error to the attention of the trial court, Appellant has therefore waived all but plain error review. Under the plain error rule, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The rule places the

following limitations on a reviewing court's determination to correct an error despite the absence of timely objections at trial: (1) "there must be an error, i.e. a deviation from a legal rule," (2) "the error must be plain," that is an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Hoppe*, 2023-Ohio-2188, ¶ 67 (5th Dist.) citing *State v. Wood*, 2020-Ohio-4251, ¶ 18 (5th Dist.) citing *State v. Dunn*, 2009-Ohio-1688, ¶ 89 (5th Dist.), citing *State v. Morales*, 2004-Ohio-3391, ¶ 19 (10th Dist.).

{¶19} "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *State v. Romy*, 2021-Ohio-501, ¶ 49 (5th Dist.) citing *Rigby v. Lake County*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. Id. The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶20} The Ohio Supreme Court has held that an officer may not testify as to what a defendant's blood-alcohol content would be based solely on the HGN results:

[A]lthough results on an HGN test may be admissible at trial by a properly trained officer, such an officer may not testify as to what he or she believes a driver's actual or specific BAC level would be, based solely on the HGN test results. * * * Accordingly, a properly qualified officer may testify at trial regarding a driver's performance on the HGN test as to the issues of

probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. See R.C. 4511.19(A)(1). However, such testimony may not be admitted to show what the exact alcohol concentration level of the driver was for purposes of demonstrating a violation of R.C. 4511.19(A)(2), (3), or (4).

*State v. Bresson*, 51 Ohio St.3d 123, 129-130, 554 N.E.2d 1330, 1336 (1990).

{¶21} Trooper Taylor testified that Appellant had six out of six clues on the HGN test. When the State asked Trooper Taylor if the HGN test was a good indicator of impairment, he responded, "It has the highest percentage rate. It has the highest percentage rate if you have six of six clues. I'm thinking too hard. I can't recall but it is over eighty percent that the individual is at or over the legal limit for alcohol which is .08." (T. 110). On cross-examination, trial counsel elicited further testimony from Trooper Taylor regarding the statistical probability of testing over the BAC legal limit based on the results of the HGN test.

{¶22} Appellant cites this Court to *State v. Grizovic*, 2008–Ohio–3162 (1st Dist.), where the First District Court of Appeals found that the trial court had "erred by admitting [the arresting trooper's] testimony concerning the statistical probability that [appellant] would have tested over .10," and that this error was not harmless. *Id.* at ¶ 17. The *Grizovic* court further held that "[e]xpert testimony linking blood-alcohol content to impairment" was necessary and that the court "[could not] determine what weight the jury gave to this prejudicial testimony," that the court "[could not] conclude, based on the other evidence presented at trial that the admission of such testimony amounted to harmless error * * *." *Id.* at ¶ 17–18.

{¶23} The Fourth District Court of Appeals examined *State v. Bresson* in *State v. Martin*, 2005-Ohio-1732 (4th Dist.), where the appellant had been convicted of driving while under the influence in violation of R.C. 4511.19(A)(1), and, at trial, the arresting officer testified that "on the [HGN] test there's a total of six clues[;] however, [if] four or more clues are detected it's a 77% probability and at the time that this manual I was trained on came out that the person would test over the legal limit which at that point was .10." *Id.* at ¶ 15. The Fourth District noted, "the trooper did not testify that the HGN test results would show appellant's exact alcohol concentration. Instead, his testimony indicated to the jury that because appellant exhibited more than four clues on the test, a 77% probability exists that appellant would test over .10." *Id.* at ¶ 37. But, the court cautioned, "[w]e believe, however, that testimony to suggest a specific mathematical probability that the appellant would have tested over the statutory limit if she had taken a test is problematic." *Id.* Nevertheless, the Fourth District concluded that, in light of the other evidence presented, such as the glassy bloodshot eyes, the odor of alcohol, and the failure of the field sobriety tests, the admission of the trooper's testimony as to statistical probabilities was harmless error. *Id.* at ¶ 39.

{¶24} In *State v. Allen*, 2010-Ohio-4124 (10th Dist.), the Tenth District Court of Appeals followed *State v. Martin* in a case where the arresting officer testified that based on the appellant's performance in the HGN test and walk-and-turn field sobriety tests, there was a statistical probability that appellant would have tested "at .10 or above blood alcohol content." *Id.* at ¶ 20. The arresting officer did not testify that based solely on the HGN test results as to what he believed the appellant's actual or specific BAC level was. The officer testified that based on his training there was a statistical probability that an

individual who failed the test would have a BAC level over the legal limit. The Tenth District concluded,

> While this may be problematic and perhaps should not have been admitted absent expert testimony, in light of the other evidence presented, the admission of Officer Wolfangel's testimony concerning statistical probabilities amounted to harmless error. The other evidence taken into consideration includes the fact that Officer Wolfangel smelled alcohol on appellant's breath, the fact that appellant admitted to drinking, the fact that Officer Wolfangel observed that appellant's eyes were bloodshot, glassy and unfocused, the fact that appellant was swaying and being unsteady, and the fact that appellant failed all three field sobriety tests. All of the foregoing testimony, coupled with Officer Wolfangel's up-to-date training specific to the detection of one who is under the influence of alcohol and/or drugs, as well as his years of experience coming into contact and observing both persons under the influence and not under the influence, we find that the admission of Officer Wolfangel's testimony regarding statistical probabilities amounted to harmless error.

*State v. Allen*, 2010-Ohio-4124, ¶ 24 (10th Dist.).

{¶25} In the present case, Trooper Taylor did not testify, based solely on the HGN test results, as to what he believed Appellant's actual or specific BAC level was. He testified that based on his training, as to a statistical probability that an individual who had six of six clues on the HGN test would have a BAC level over the legal limit. Similar to the fact patterns of *Martin* and *Allen*, there was other evidence presented that indicated

Appellant's impairment such as the glassy bloodshot eyes, the odor of alcohol, slurring speech, a flushed face, body tremors, and the failure of the field sobriety tests. The admission of Trooper Taylor's testimony concerning statistical probabilities, in consideration with the other evidence of impairment, amounted to harmless error. Appellant has failed to establish there was plain error in the admission of Trooper Taylor's testimony regarding the statistical correlation between the HGN test to potential BAC results. *See also State v. Robertson*, 2012-Ohio-2955 (5th Dist.).

{¶26} Appellant's first Assignment of Error is overruled.

<u>Ineffective Assistance of Trial Counsel</u>

{¶27} In his third Assignment of Error, Appellant contends in part that he was denied the effective assistance of trial counsel for counsel's failure to object to Trooper Taylor's testimony as to the statistical probability of a BAC over the legal limit and the results of a HGN test.

{¶28} A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶29} To warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was

unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶30} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "* * * need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

{¶31} In this case, Trooper Taylor did not testify as to what he believed Appellant's actual or specific BAC level was based on Appellant's HGN test results. He testified that based on his training, there was a statistical probability that an individual who failed the HGN test would have a BAC level above the legal limit. There were other indicators of impairment in this case, such as glassy bloodshot eyes, the odor of alcohol, a flushed face, slurred speech, and the failure of the field sobriety tests. We found that the admission of Trooper Taylor's testimony regarding statistical probabilities was not plain error and amounted to harmless error. In light of our conclusion, we find Appellant's trial counsel did not err in failing to object during Trooper Taylor's testimony. Appellant was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. *State v. Edwards*, 5th Dist. Licking No. 21CA0083, 2022-Ohio-3534, ¶ 42.

{¶32} Appellant's third Assignment of Error as to that argument is overruled.

**II. and III.**

<u>Closing Arguments</u>

{¶33} In Appellant's second Assignment of Error, he contends his Due Process rights were violated by the State's remarks during its closing argument where it referred to Appellant's prior OVI conviction in 2015. Trial counsel did not object to the comments it raises as error on appeal, so this Assignment of Error will be reviewed for plain error. Under the plain error rule, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The rule places the following limitations on a reviewing court's determination to correct an error despite the absence of timely objections at trial: (1) "there must be an error, i.e. a deviation from a legal rule," (2) "the error must be plain," that is an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Hoppe*, 2023-Ohio-2188, ¶ 67 (5th Dist.) citing *State v. Wood*, 2020-Ohio-4251, ¶ 18 (5th Dist.) citing *State v. Dunn*, 2009-Ohio-1688, ¶ 89 (5th Dist.), citing *State v. Morales*, 2004-Ohio-3391, ¶ 19 (10th Dist.).

{¶34} Appellant was charged with a violation of R.C. 4511.19(A)(2). It reads:

(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) of this section, or any other equivalent offense shall do both of the following:

(a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;

(b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶35} A prior OVI conviction within 20 years is an element of R.C. 4511.19(A)(2). *State v. Meadows*, 2019-Ohio-4943, ¶ 27 (5th Dist.) citing *State v. Holland*, 2012-Ohio-486, ¶ 19 (5th Dist.). In *State v. Hoover*, the Ohio Supreme Court stated:

It is crucial to note that the refusal to consent to testing is not, itself, a criminal offense. The activity prohibited under R.C. 4511.19(A)(2) is operating a motor vehicle while under the influence of drugs or alcohol. A person's refusal to take a chemical test is simply an additional element that must be proven beyond a reasonable doubt along with the person's previous DUI conviction to distinguish the offense from a violation of R.C. 4511.19(A)(1)(a).

*State v. Hoover*, 2009-Ohio-4993, ¶ 21. We have previously found that a trial court did not err in allowing the State to present evidence of a defendant's prior conviction "as such was an element of the offense for which the State bears the burden of proof." *State v. Meadows*, 2019-Ohio-4943, ¶ 27 quoting *Holland*, 2012-Ohio-486 at ¶ 21; *see also State v. Leasure*, 2015-Ohio-5327 (4th Dist.).

{¶36} Appellant does not dispute that a prior OVI conviction within 20 years is an element for a violation of R.C. 4511.19(A)(2). Appellant contends that during the State's closing arguments, it improperly raised Appellant's prior OVI conviction for purposes beyond an element of R.C. 4511.19(A)(2). He argues the State used his prior conviction to argue that Appellant was impaired and yet refused to submit to a breath test, just as he did in the prior case.

{¶37} Comments made during opening and closing statements are not evidence for the jury to consider. *State v. Walker*, 2022-Ohio-1238, ¶ 39 (8th Dist.) citing *State v. Frazier*, 73 Ohio St.3d 323, 328, 652 N.E.2d 1000 (1995.) Additionally, "[p]rosecutors are granted wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial." *State v. Powell*, 2012-Ohio-2577, ¶ 149. "The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial." *State v. Jackson*, 92 Ohio St.3d 436, 441, 751 N.E.2d 946 (2001), citing *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). Therefore, "[t]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Powell* at ¶ 149, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶38} Because Appellant was charged with R.C. 4511.19(A)(2), the State was required to prove beyond a reasonable doubt that Appellant had a prior OVI conviction within 20 years and that he refused to take a chemical test. Appellant attempted to establish at trial that he did not refuse to take the breath test; rather, he argued that he attempted to take the breath test but did not understand Trooper Taylor's instructions and

was therefore unable to complete the breath test. The State's comments during its closing arguments as to Appellant's prior OVI conviction were related to the elements of R.C. 4511.19(A)(2) and Appellant's claims that he did not refuse the breath test.

{¶39} Under this specific scenario and in the context of the entire trial, we do not find the trial court committed plain error in allowing the State's references to Appellant's prior OVI conviction.

{¶40} Appellant's second Assignment of Error is overruled.

<u>Ineffective Assistance of Trial Counsel</u>

{¶41} In Appellant's third Assignment of Error, he further contends that he received the ineffective assistance of trial counsel because counsel failed to object to the State's alleged misconduct during its closing argument. We disagree.

{¶42} A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶43} To warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶44} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "* * * need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

{¶45} In light of our conclusion that the State did not commit misconduct and there was no plain error, we find trial counsel did not err in failing to object during closing argument. Appellant was not prejudiced by trial counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. *State v. Edwards*, 2022-Ohio-3534, ¶ 42 (5th Dist.).

{¶46} Appellant's third Assignment of Error as to this argument is overruled.

**IV. and V.**

{¶47} In his fourth and fifth Assignments of Error, Appellant contends his conviction under R.C. 4511.19(A)(2) was against the sufficiency and manifest weight of the evidence. We disagree.

{¶48} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 1997-Ohio-52, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a

reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶49} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶50} Appellant was convicted of violating R.C. 4511.19(A)(2). It reads:

(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) of this section, or any other equivalent offense shall do both of the following:

(a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;

(b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the

officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶51} A prior OVI conviction within 20 years is an element of R.C. 4511.19(A)(2). *State v. Meadows*, 2019-Ohio-4943, ¶ 27 (5th Dist.) citing *State v. Holland*, 2012-Ohio-486, ¶ 19 (5th Dist.). In *State v. Hoover*, the Ohio Supreme Court stated:

> It is crucial to note that the refusal to consent to testing is not, itself, a criminal offense. The activity prohibited under R.C. 4511.19(A)(2) is operating a motor vehicle while under the influence of drugs or alcohol. A person's refusal to take a chemical test is simply an additional element that must be proven beyond a reasonable doubt along with the person's previous DUI conviction to distinguish the offense from a violation of R.C. 4511.19(A)(1)(a).

*State v. Hoover*, 2009-Ohio-4993, ¶ 21.

{¶52} The focus of Appellant's argument on appeal is whether Appellant refused to take the breath test. Appellant contends there was insufficient evidence to establish that he refused to take the breath test and the determination that he refused to take the breath test was against the manifest weight of the evidence.

{¶53} Trooper Taylor asked Appellant if he wanted to take a breath test. (T. 153). Appellant never stated that he refused to take the breath test. (T. 154). Trooper Taylor testified that he advised Appellant on the consequences of taking or not taking a breath test, provided Appellant with instructions on how to take the breath test, and gave Appellant three opportunities to take the breath test. (T. 123, 128). He believed that

Appellant understood him and tried to use a translator application to make things go quicker. (T. 154-155). Trooper Taylor testified that at the end, once Appellant finally sealed his lips around the end of the mouthpiece, he was holding his air and wasn't blowing into the machine. Trooper Taylor said that if Appellant had been blowing into the machine, the tone on the machine would have stayed on and would not have stopped. When the tone stops, there is no air getting into the machine. (T. 131). Based on Appellant's three failed attempts to correctly perform the test, Trooper Taylor found that Appellant failed to cooperate and marked BMV 2255 Form as a refusal. Trooper Taylor recalled that after Appellant made the attempts on the test, he stated, "that he cannot…that he cannot I believe he said he cannot do the test or something along them lines." (T. 154).

{¶54} As noted by both parties, there is no Ohio statutory definition of "refusal." The trial court provided the jurors in this case with the definition of "refusal" as explained by the Ohio Jury Instructions:

> 10. REFUSAL. A refusal to submit to a chemical test occurs when a person, by his/her acts, words, or general conduct, manifests an unwillingness to submit to the test. Such refusal need not have been knowingly or intentionally made.

*Ohio Jury Instructions*, 2 CR § 711.19(A)(2) (Rev. Apr. 11, 2017). We find that the State put forth sufficient evidence that, if believed, would allow a reasonable juror to find Appellant guilty of driving under the influence with a prior OVI conviction and a refusal to take a chemical test. Whether Appellant refused to take the breath test was a question for the jury to weigh and the jury found Trooper Taylor's testimony credible that Appellant

by his general conduct in failing to blow into the machine on his third attempt manifested an unwillingness to submit to the breath test.

{¶55} Any rational trier of fact could have found the essential elements of R.C. 4511.19(A)(2) were proven beyond a reasonable doubt. Nor is this the exceptional case in which the evidence weighs heavily against a conviction. Appellant's fourth and fifth Assignments of Error are therefore overruled.

## CONCLUSION

{¶56} The judgment of the Licking County Municipal Court is affirmed.


By: Delaney, P.J.,

Hoffman, J. and

King, J., concur.